2 ct

7

7/3/01

FILED
HARRISBURG

JUL - 2 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC J. EPSTEIN | : | CIVIL ACTION NO. CV-010682 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (JUDGE YVETTE KANE) |
| | : | |
| SPENCER ABRAHAM, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED MOTION OF EXELON GENERATION COMPANY, LLC FOR LEAVE TO INTERVENE AS A PARTY DEFENDANT

Exelon Generation Company, LLC, by and through its attorneys, hereby

submits this Memorandum of Law in Support of Its Unopposed Motion for Leave

to Intervene as a Party Defendant.

# I.    PRELIMINARY STATEMENT

The Department of Energy and the predecessors of Exelon Generation

Company, LLC entered into an amendment to an existing contract for the storage

and disposal of spent nuclear fuel.[1]  The plaintiff has brought suit against

individuals at the Department of Energy in their official capacity, challenging the

validity of that amendment.  Exelon should be allowed to intervene in this action to

protect its significant, concrete contractual interests that are directly affected by the

plaintiff's action, but that will not be adequately represented by the defendants.

# II.    PROCEDURAL HISTORY

On April 19, 2001, the plaintiff filed suit against the Secretary of Energy and

a contracting officer of the United States Department of Energy (DOE).  The

defendants moved to dismiss the complaint on June 18, 2001, and will be filing a

brief in support of that motion on or about July 2, 2001.  Exelon respectfully

requests that it be allowed to intervene as a party defendant for purposes that

include participating in the briefing on the defendants' motion to dismiss.  The

---

[1]    Philadelphia Electric Company, predecessor of PECO Energy Company, entered into the original contract with DOE.  PECO Energy Company entered into the settlement amendment that is specifically challenged in this lawsuit.  PECO Energy Company itself is a predecessor to proposed intervenor Exelon Generation Company, LLC.  The complaint makes reference to both PECO and Exelon.  *E.g.*, Complaint, ¶ 16.  For the sake of convenience, all of these entities will be referred to here as "Exelon."

defendants take no position on intervention, and will not file an opposition.  The
plaintiff has represented that he does not oppose the motion.

Exelon has included with its submission a proposed brief in support of
defendants' motion to dismiss.  Although some cases hold that a proposed answer
is not required by an intervenor in this procedural posture, others have suggested
the contrary.  In an excess of caution, Exelon has also included a proposed answer.

### III.   STATEMENT OF FACTS

Under the authority of the Nuclear Waste Policy Act (NWPA), DOE entered
into a contract with Exelon for the storage and disposal of spent nuclear fuel at the
Peach Bottom Atomic Power Station.  In accordance with the NWPA mandate, the
contract required DOE to begin disposal of the waste by January 31, 1998.[2]  DOE
did not comply with its obligations to begin disposal by that date.  This caused
Exelon to incur considerable expense in managing and storing the spent nuclear
fuel.

In order to compensate Exelon for the losses it incurred as a result of DOE's
breach of the contract and to settle any potential claims that Exelon might have
against DOE, Exelon and DOE negotiated an amendment to the contract that,

---

[2]   42 U.S.C. § 10222(a)(5)(b); Complaint, Attachment 1 at 6 (Article II).

among other things, allowed Exelon to recover credits for future payments that it otherwise would have been obligated to make under the contract.[3]

The complaint asserts claims under the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA), alleging that DOE failed to comply with the procedures prescribed by those two statutes before it entered into the Amendment.  The plaintiff seeks relief that will directly and dramatically impair Exelon's contractual rights.  Specifically, the plaintiff has requested that this Court:

(i) "declare that the agency decision making failed to comply with the [NEPA] and the [APA], and rules and policy requiring publication in the Federal Register;" (ii) "declare that the Plaintiffs [sic] will be adversely affected by the Amendment to the Contract entered into between [DOE] and [Exelon];" and (iii) "remand the matter for the preparation of a properly executed and reviewed Environmental Impact Statement (EIS)."[4]

## IV.    STATEMENT OF QUESTION INVOLVED

Whether Exelon should be allowed to intervene in this action, where the plaintiff seeks relief that would impair Exelon's significant interests in an

---

[3]    Complaint, ¶ 33 & Attachment 1 at 1-2 (Recitals), 5-6 (Article IV.B.6), 10-11 (Article VIII.F-H), 15 (Article XI.A.1-2).

[4]    Complaint at 14.

4

amendment to a contract between Exelon and the government, and where those

interests may not be adequately represented by the defendants.

## V.    ARGUMENT

### A.    Exelon Is Entitled to Intervene as of Right Due to Plaintiff's Threatened Impairment of Exelon's Significant, Concrete Contractual Rights in the Amendment That Will Not Be Adequately Represented by Defendants.

Exelon easily meets all four requirements for intervention as of right under

Federal Rule of Civil Procedure 24(a)(2).  The Third Circuit requires proof of four

elements from an applicant seeking intervention as of right:

> first, a timely application for leave to intervene; second, a sufficient
> interest in the litigation; third, a threat that the interest will be
> impaired or affected, as a practical matter, by the disposition of the
> action; and fourth, inadequate representation of the prospective
> intervenor's interest by existing parties to the litigation.

*Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998).

In addition to the plaintiff's request for a "remand of the matter" so that an

EIS may be prepared, plaintiff seeks to have this Court declare that the

Amendment violated NEPA and the APA.  It is apparent from these requests that

the plaintiff has every intention of significantly impairing Exelon's specific,

existing contract rights with DOE.  The defendants, striving to strike a balance

between fulfilling their present contractual obligations to Exelon, remedying the

breach of other DOE obligations, and protecting the public interest in the storage

and disposal of SNF, cannot be expected to adequately represent Exelon's unique

private interest.  As a result, this Court should allow Exelon to intervene as of right under Rule 24(a)(2).

      1.     Exelon's application for intervention is timely.

Exelon clearly meets the timeliness requirement.  This application for intervention is contemporaneous with defendants' filing of their brief in support of their motion to dismiss the plaintiff's complaint.  The plaintiff will not be prejudiced by the timeliness of Exelon's filing, especially given that "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182 (3d Cir. 1994); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1205-06 (5th Cir. 1994).

      2.     Exelon's existing contractual rights under the amendment, the same rights attacked by the plaintiff, constitute a 'sufficient interest in the litigation.'

To fulfill the second requirement under Rule 24(a)(2), Exelon must have an interest "'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'"[5]  Intervenors "should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972.

---

[5]    *Kleissler*, 157 F.3d at 969 (quoting *Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 27 L. Ed. 2d 580 (1971)).

The Third Circuit's decision in *Kleissler* controls this inquiry and establishes that Exelon's cognizable, legal rights under the amendment are more than sufficient to satisfy the "interest" requirement. In that decision, the plaintiffs filed suit against the United States Forest Service and asserted, among other things, that the agency violated NEPA by not obtaining an EIS and failing to consider more environmentally protective measures before approving contracts for logging in the Allegheny National Forest. The plaintiffs sought a declaration that approval of the projects violated NEPA.

A number of entities moved to intervene, including several timber companies who had existing logging contracts with the government. Other timber companies who operated in that region and depended on contracts for their existence, but did not have existing contracts at that time, also sought intervention. The district court allowed the companies with existing contracts to intervene, but denied the request of the other companies. The Third Circuit reversed the denials of the requested intervention, holding that _all_ of the intervenors had shown a "sufficient interest" under Rule 24(a)(2). This included not only the timber companies with existing contracts (such as Exelon here), but also the companies who had no existing contracts. 157 F.3d at 973.

By unequivocally endorsing intervention where an intervenor's existing contractual rights will potentially be affected, the *Kleissler* decision

7

requires that Exelon be allowed to intervene in this case as of right. Under both precedent and logic, Exelon has shown a direct, concrete personal interest that satisfies the second requirement of the test. In fact, the Court of Appeals for the Eleventh Circuit has recently granted Exelon's motion to intervene in a suit brought in that Court challenging (on the basis of certain funding proscriptions contained in the NWPA) the agreement at issue in this case. *See Alabama Power Co., et al. v. DOE, et al.*, No. 00-16138-J (11th Cir., filed November 22, 2000).

> 3. Exelon's contractual rights will be affected and impaired by the plaintiff's suit.

Under the "impairment" prong of the test, the Third Circuit has continually stressed "the practical consequences of the litigation" in considering whether an intervenor has shown a "tangible threat" to a "legal interest."[6] The court has noted that the present language of Rule 24(a)(2) was enacted "to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view . . . that intervention must be limited to those who would be legally bound as a matter of res judicata." *Kleissler*, 157 F.3d at 970.

---

[6] *Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995); *see also Kleissler*, 157 F.3d at 970.

In a passage particularly relevant to the "impairment" inquiry in the present case, the *Kleissler* Court noted that, in the present era of active public interest groups challenging government action, important third party rights are often affected and must be protected:

> The expansion of standing by statute and case law has enabled 'private attorneys general' and 'public interest' groups to call governmental agencies to task in litigation. These efforts, though often well-intentioned, sometimes concentrate on narrow issues that are of significant concern to plaintiffs but have an immediate and deleterious effect on other individuals and entities. Rather than barring access to these parties, Rule 24 allows the court to give them the opportunity to present their positions.

*Kleissler*, 157 F.2d at 971. The plaintiff in this case, attempting to act as a "private attorney general," has challenged the very government action creating Exelon's significant contractual interests. That was precisely the situation in *Kleissler*, where intervention as of right was held by the Third Circuit to be appropriate.

> 4.   The defendants cannot adequately represent Exelon's unique, specific interests in its contractual rights that were obtained as a remedy for DOE's past breaches.

The Supreme Court has instructed that the intervenor's burden in proving the fourth prong, which requires a showing that the existing parties will not adequately represent the intervenor's interests, is "minimal" and is "satisfied if the applicant

shows that representation of his interest 'may be' inadequate."[7]  Where, as here,

"an agency's views are necessarily colored by its view of the public welfare rather

than the more parochial views of a proposed intervenor whose interest is personal

to it, the burden is comparatively light." *Kleissler*, 157 F.3d at 972.

Courts have routinely held in similar situations that a government entity did

not adequately protect a private intervenor's interest.[8]  Again, the court in *Kleissler*

found that

> the government represents numerous complex and conflicting
> interests in matters of this nature.  The straightforward business
> interests asserted by intervenors here may become lost in the thicket
> of sometimes inconsistent governmental policies.  Although it is
> unlikely that the intervenor's economic interest will change, it is not
> realistic to assume that the agency's programs will remain static or
> unaffected by unanticipated policy shifts.[9]

Exelon's interest in entering the Amendment was to obtain a remedy

for the breach of its contract with DOE, and it has a continuing interest in

having DOE fulfill its obligations under the Amendment so that Exelon does

---

[7]    *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30
L. Ed. 2d. 686 (1972) (holding that the Secretary of Labor did not adequately
represent the interests of a worker challenging a union election); *see also Dev.
Finance Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir.
1995).

[8]    *Kleissler*, *157 F.3d* at 973-74; *Alcan*, 25 F.3d at 1185 n.15; *Espy*, 18 F.3d at
1207-08.

[9]    *Kleissler*, 157 F.3d at 973-74 (citation omitted).

not again incur significant losses in managing, storing and disposing of the SNF without any remedy. Comparing the public-welfare interests of the defendants with the private concerns of Exelon clearly demonstrates that Exelon has met its "minimal" burden to satisfy the "inadequate representation" requirement.

> **B.    If This Court Determines That Exelon Is Not Entitled to Intervene as of Right, in the Alternative, Exelon Requests That This Court Allow Permissive Intervention Under Rule 24(b)(2).**

Rule 24(b)(2) permits permissive intervention "upon timely application" "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). The Rule directs that the district court, in exercising its discretion, "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* In recently allowing permissive intervention, however, this Court found, consistent with Third Circuit authority, that where the intervention application is filed soon after the complaint, "the district court should not consider the present potential for delay as a factor counseling against intervention."[10] As noted above, there is no prejudice from delay here.

---

[10]    *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Board*, 138 F. Supp. 2d 593, 602 (M.D. Pa. 2001).

Further, the court in *Kleissler* recognized the benefits of allowing intervention early in the proceedings, as the "early presence of intervenors may serve to prevent errors from creeping into the proceedings, clarify some issues, and perhaps contribute to an amicable settlement." *Kleissler*, 157 F.3d at 974. This principle is especially true in this case, where Exelon has first-hand knowledge regarding the circumstances regarding the Amendment being challenged and the expenses and risks involved in the storage and disposal of SNF at the Peach Bottom site. Hence, not only will Exelon's participation in this action not prejudice any party, it also will likely help this Court make a more informed decision about all of the significant interests that are at stake in this case. Because Exelon's defense clearly involves questions of law and fact in common with the underlying claims of the parties, and because Exelon's participation would help clarify the issues, this Court should allow Exelon to intervene permissively under Rule 24(b)(2).

## VI.    CONCLUSION

For the foregoing reasons, Exelon should be allowed to intervene as of right under Rule 24(a)(2) or, alternatively, under permission of the court pursuant to Rule 24(b)(2).

Respectfully submitted,

Of Counsel:
Edward J. Cullen, Jr.
Jeffrey J. Norton
Exelon Corporation
2301 Market Street
Philadelphia, PA 19103

*Vincent Candiello/jmw*

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101
(717) 237-4014

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1800 M Street, N.W.
Washington, D.C. 20009
(202) 467-7191

July 2, 2001