**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
Harrisburg Division

ERIC JOSEPH EPSTEIN
    Plaintiff,

v.

SPENCER ABRAHAM, Secretary of the
U.S. Department of Energy; HERBERT
WATKINS, Contracting Officer, U.S.
Department of Energy

    Defendants

Civ. No. 01-0682
Judge Kane

FILED
HARRISBURG
JUL 17 2001
MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

## PLAINTIFF EPSTEIN'S ANSWER TO DEFENDANTS' MOTION TO DISMISS

AND NOW, comes the Plaintiff in the above captioned case, and answers the Defendants' Motion to Dismiss. To the extent that one or more of Defendant's arguments are advanced in support of Partial Summary Judgment for the Defendant, the Plaintiff's Answers are advanced in opposition to that request.

### I.    STANDARD OF REVIEW

Generally, a court may only dismiss a Plaintiff's complaint if the "plaintiff can prove no set of facts which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957). That court, when responding to a Motion to Dismiss for Failure to State a Claim, must "examine all factual allegations and all reasonable inferences as true and view them in the light most favorable to the plaintiff." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3rd Cir. 1988).

## II. THE PLAINTIFF'S COMPLAINT CLEARLY STATES A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED UNDER THE ADMINISTRATIVE PROCEDURE ACT FOR THE DEFENDANT'S REFUSAL TO PUBLISH THE CONTRACT AMENDMENT IN THE FEDERAL REGISTER

In Count Two of the Complaint, the Plaintiff alleges that the Department of Energy violated the Administrative Procedure Act (APA) and the Department's own internal policies governing public notice by failing to publish notice of the Amendment in the Federal Register. The Plaintiff also alleges that the Department of Energy failed to treat the Contract Amendment as a rulemaking, and thus, violated laws governing public notice, comment, and review.

Although the Defendant is correct in stating that the "APA expressly excludes. . .loans, grants, benefits or contracts" from rule-making procedures, the Defendant fails to state that the Department of Energy (DOE) has been exempted from the operation of that clause. Under 42 U.S.C. section 7191, the DOE cannot claim an exemption from the APA for contracts. The relevant section reads "the exception from the requirements of section 553 of Title 5 provided by subsection (a)(2) of such section with respect to public property, loans, grants, or contracts shall not be available." *See* 42 U.S.C. section 7191(b)(3).

Construing that provision, one District Court has stated that "the public contracts exception to the section 553 requirements is clearly inapplicable to the Department of Energy due to 42 U.S.C. section 7191(b)(3)." *Local Union Nos. 21, 27 et al., v. Hodel*, 1984 U.S. Dist. LEXIS 18844 (March 7, 1984). In that case, the Department had argued that newly adopted Fitness Standards for DOE employees were exempt from the public

notice and comment rules because they were part of the employees' private contracts with the Department. The court refused to entertain such an argument, and ruled that the DOE had violated the law by failing to subject the application of the contract provisions to notice and comment procedures, stating that "a contrary result would emasculate the APA protections by allowing an agency to circumvent the statutory regulations by describing a rule as an addendum to a public contract." The court punctuated its ruling by declaring that its ruling was necessary because "the process of notice and comment rulemaking is not to be an empty charade." *Id.* at *9 (*quoting Connecticut Light and Power Co.*, 673 F.2d 525, 528 (D.C. Cir. 1983).

The Defendant contends that the Department possessed the complete discretion and latitude to decide whether or not to subject the initial contract to a rulemaking process, and therefore the Department possessed the same discretion to decide not to publicly advertise the Amendment. Such is clearly not the case. Under the applicable statutory law exempting the DOE from the APA public contracts exclusion, it is clear that DOE was simply complying with the law by publishing the initial or Standard Contract.

The Defendant's argument is made even less plausible because amendments and modifications to the Standard Contract – prior to the Amendment at issue - have also been subjected to rulemaking procedures by the Department. From the initial adoption of the Standard Contract at 48 FR 16599 (April 18, 1983), the contract was further amended and modified – through the rulemaking process – several other times. Public comment and review on various amendments and modifications was afforded in 1983 (48 FR 23160, May 24, 1983); 1987 (52 FR 35359, September 18, 1987), and in 1991 (56 FR 67659, December 31, 1991). Nor were these modifications simple ones – they involved

comprehensive revisions to the original Standard Contract. In 1991, for example, the amendment revised the standard contract by "revising Article I, paragraph 13, and Articles VIII-A.1, and appendix G to the Contract, [and] adding Annex A to appendix G as set out below." *See* 56 FR 67659 at Introduction.

To now contend that the most recent contract amendment is exempted from public notice and comment procedures seems to be – on its face – an arbitrary decision by the Department unsupported by either the applicable laws or the Department's prior practice.

Finally, the Defendant argues that the instant Amendment is similar to the "individual contracts" which "incorporated the terms of the Standard Contract modified to the particular circumstances of the contracting parties." *See* Defendant's Memorandum at 3. Even a cursory review of the Standard Contract reveals that the Contract itself specifically provided spacing and room for items such as "Delivery Commitment Schedules", "Actual Discharges", and "Ten Year Discharge Forecasts". *See* 10 CFR section 961.11 at Appendix B-C. It was not, therefore, simply a framework to be completed with differing terms for each facility operator, but a comprehensive Contract intended to apply as promulgated to each operator. Thus, the original modifications themselves – to customize the Standard Contract to individual nuclear operators – was not only foreseen and planned by the DOE, but the public was also placed on notice, for review and commenting purposes, that slight customization of each Contract was a necessary part of the rulemaking.

Thus, the Plaintiff has clearly and succinctly stated a cause of action upon which relief can be granted. In paragraph 59 of the Complaint, the Plaintiff alleged that "[t]he Amendment to the Contract entered into between the DOE and PECO Energy Company

did not comply with rule-making procedures, and was not published in the Federal Register for notice, review, and comment." *See* Complaint at 12. The Complaint also recounts the efforts of the Plaintiff to raise these issues to the Department, and the Department's subsequent formal replies to those efforts. *See Complaint* at paragraphs 60 – 62. Plaintiff's APA Cause of Action concludes with the allegation that the "DOE acted unlawfully in entering into the Amendments to the Contract without treating the Amendments as rules to be promulgated and thus, the DOE violated the Administrative Procedure Act." *See Complaint* at paragraph 68.

As such, this Count clearly meets or exceeds the threshold legal inquiry used to determine whether the Plaintiff has successfully stated a claim upon which relief can be granted.

### III. THE PLAINTIFF HAS CLEARLY STATED A CAUSE OF ACTION UNDER NEPA BECAUSE THE DOE'S REGULATIONS DO NOT EXCLUDE SUBSTANTIVE CONTRACT AMENDMENTS FROM NEPA REVIEW AND THE PLAINTIFF HAS ALLEGED THAT THE AMENDMENT CONSTITUTES A MAJOR FEDERAL ACTION REQUIRING NEPA REVIEW

In its Motion to Dismiss, the Defendant contends that the Plaintiff's first Count must fail as a matter of law because the DOE's own regulations exclude this contract Amendment from NEPA review. In the alternative, the Defendant contends that NEPA review is unnecessary because the Amendment is not a "major federal action" which requires NEPA review.

### (A) The DOE NEPA Regulations Do Not Exempt this Contract Amendment Because the Regulations Only Exempt those Amendments Which are "Clarifying or Administrative in Nature," Not Amendments Which Substantially Modify Existing Agreements

The Defendant contends that the DOE NEPA regulations "categorically exclude contract Amendments like the one at issue here from NEPA's procedural requirements." *See Defendant's Memorandum* at 9.

Federal agencies may, by regulation, eliminate a "category of actions" from the environmental review requirements of the National Environmental Policy Act (NEPA) if those actions "do not individually or cumulatively have a significant effect on the human environment." *See* 40 CFR section 1508.4. The Department of Energy has used this grant of authority to promulgate the Department's own list of those actions which qualify as "categorical exclusions" under NEPA. *See* 10 CFR section 1021.410.

One of those exclusions is for "contract interpretations, amendments, and modifications that are clarifying or administrative in nature." *See* 10 CFR section 1021.410 at Appendix A to Subpart D. While the Defendant attempts to argue that the instant Contract Amendment falls within that exclusion, a cursory review of the language of the Contract Amendment, as reiterated in the Plaintiff's Complaint, clearly reveals that the Defendant's argument lacks any foundation.

As recounted by the Defendant's Memorandum, the Contract Amendment was part of a settlement agreement between PECO Energy and the DOE, entered into as a response to the DOE's failure to satisfy its obligation to accept spent nuclear fuel from the corporation and PECO Energy's potential claim against the Department for breach of contract. *See* Defendant's Memorandum at 4. In fact, the language of the Contract

Amendment clearly memorializes that "DOE and PECO Energy hereby agree that settlement of PECO Energy's potential claim, by this Amendment of the 44405 Contract, is in the interest of both parties." *See* Contract Amendment entered into July 19, 2000 at 2. Thus, by its very language, the Amendment is not "clarifying or administrative in nature", but a settlement of a potential legal claim. Obviously, in return for giving up a potential legal claim against the DOE, it would be expected that PECO Energy would gain some substantive, and very real, modifications and amendments to the existing Contract. A cursory review of the provisions of the Contract Amendment bear out this contention.

As recounted in the Plaintiff's Complaint, the Amendment "altered the original Contract and changed nine of the Titles of the original Contract" (*see* paragraph 34 of the Complaint); "obligates the DOE to provide additional monetary payments to PECO Energy Company if more favorable agreements are reached with other owners of nuclear plants" (*see* paragraph 44 of the Complaint); "enables exchanges of PECO's Peach Bottom removal allocation credits with other nuclear units or other Purchasers" (*see* paragraph 45 of the Complaint); allows the PECO Energy Company to store spent nuclear fuel and high level radioactive waste produced at other nuclear facilities at Peach Bottom (*see* paragraph 46 of the Complaint); and "establishes Alternative Dispute Resolution (ADR) as a means of resolution for disagreements over the Amendment" (*see* paragraph 47 of the Complaint).

Although the Defendant attempts to paint the Amendment as simply an attempt to "clarify" the "parties' obligations" under the Standard Contract, it is clear from the comprehensive nature of the Amendment that the action was taken to comprehensively