**ORIGINAL**

FILED HARRISBURG, PA AUG 03 2001 MARY E. D'ANDREA, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC J. EPSTEIN | CIVIL ACTION NO. CV-01-0682 |
| Plaintiff, | |
| v. | (JUDGE YVETTE KANE) |
| SPENCER ABRAHAM, et al. | |
| Defendants. | |

## INTERVENOR EXELON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Exelon Generation Company, LLC (Exelon) hereby submits this Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint.[1] The complaint challenges an amendment to a contract between the Department of Energy (DOE) and Exelon regarding the disposal of spent nuclear fuel from Exelon's Peach Bottom Atomic Power Station. The Amendment

---

[1] Exelon was not originally a party to this suit, but moved to intervene as a defendant, and submitted a brief in support of the defendants' motion to dismiss on July 2, 2001. The Court granted Exelon's motion to intervene on July 12, 2001.

reallocates the financial burden associated with the continued on-site storage of spent fuel in light of DOE's failure to meet its statutory and contractual obligation to begin accepting fuel for permanent disposal by January 31, 1998.

The complaint alleges that DOE failed to perform a required environmental analysis before entering into the Amendment, in violation of the National Environmental Policy Act (NEPA). It also alleges that DOE was required by the Administrative Procedure Act (APA) to provide the public with notice and an opportunity to comment on the terms of the Amendment prior its execution. As explained more fully in Exelon's Memorandum of Law in Support of Defendants' Motion to Dismiss, the complaint should be dismissed because NEPA does not apply to agency actions such as this that will have no effect on the physical environment, and because, by its terms, the APA clearly exempts public contracts such as the Amendment from notice-and-comment rulemaking procedures.

I. **THE NEPA CLAIM SHOULD BE DISMISSED BECAUSE THE ALLEGATIONS IN THE COMPLAINT ITSELF CONFIRM THAT THE AMENDMENT WILL HAVE NO EFFECT ON THE PHYSICAL ENVIRONMENT**

The plaintiff's opposition brief does not call into question the proposition (asserted in both briefs supporting the motion to dismiss) that the NEPA claim is legally deficient because the complaint does not—and cannot—allege any harmful effect that the Amendment will have on the physical environment. Rather than pointing to some concrete effect or specific environmental risk created by the

2

Amendment, plaintiff's opposition merely avers that the complaint specifies "how [the changes made by the Amendment to the original contract] could impact communities and the natural environment surrounding PECO Energy Company's facility." Pl. Opp. at 9. The complaint does no such thing. While the complaint recites the incantation that the agreement will have an effect on the environment (*e.g.*, Complaint, ¶ 49), it does not in any way specify *how* that is possible. In fact, there will be no such effect—as explained in Exelon's opening brief, a well-founded allegation of such harm is impossible in these circumstances.[2] This is because the terms of both the Amendment and the original agreement, which are attached to and must be considered part of the complaint,[3] conclusively establish

---

[2] Exelon's opening brief demonstrated that the only two allegations in the complaint from which even a colorable inference of potential environmental impact could be raised are either insufficient for NEPA purposes, or are flatly contradicted by the terms of the Amendment itself. Specifically, the claim that the Amendment would allow a "trading regime" in allocation credits (Complaint, ¶ 45) is insufficient because credits could be traded under the original standard contract, and thus the Amendment does not represent a "change" in this respect. Exelon Br. at 10-11; *see* Complaint, Attachment 4; Complaint, Attachment 1 at 12; 10 C.F.R. § 961.11, art. V.E. Similarly, the claim that the Amendment allows waste to be delivered to Peach Bottom that could not otherwise be stored there (Complaint, ¶ 46) is false, as demonstrated by the very contractual provision to which the complaint refers. Exelon Br. at 11; Complaint, Attachment 2 at 8. Under settled principles, this allegation may not be accepted as true because it is contradicted by a document that is attached to—and considered a part of—the pleading itself. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

[3] *E.g., ALA, Inc.*, 29 F.3d at 859.

3

1-WA/1650531.1

that nothing about the Amendment could be deemed to affect the physical environment.

While it is true that a motion to dismiss may only be granted if the "plaintiff can prove no set of facts which would entitle him to relief," (Pl. Opp. at 1 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)), the Third Circuit has held that "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, 908 (3d Cir. 1997). The rule is the same in other circuits as well. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998) ("We accept as true all well-pleaded facts, as distinguished from conclusory allegations . . . ."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); 5A Charles Alan Wright, et al., Federal Practice & Procedure § 1357 (2d ed. 1997) (noting that, when considering motions under Rule 12(b)(6), courts have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," and "unwarranted deductions").

It may well be the case that in certain situations a *pro se* complaint should be held to less stringent standards than one drafted by lawyers, *e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972), but that does not mean that the pleading requirements of

4

the Federal Rules of Civil Procedure do not apply, *Dickerson v. Leavitt Rentals*, 995 F. Supp. 1242, 1245 (D. Kan. 1998) ("[A] pro se litigant is still obligated to follow the same rules of procedure as any other litigant."). Exelon respectfully submits that in these circumstances the *pro se* nature of this case should not preclude dismissal. This plaintiff has produced a fully cogent response to the motion to dismiss, replete with legal citation and invocation of the relevant standard of review. Mr. Epstein himself touts his experience and knowledge in nuclear matters, *e.g.*, Complaint, ¶¶ 1, 4, and is certainly no stranger to the legal process.[4] The problems with this complaint and lawsuit are not the result of the

---

[4] According to the NRC, the plaintiff, "Eric Joseph Epstein, has been actively involved since 1985 in testifying, filing, and intervening on nuclear decommissioning and radioactive waste isolation issues before the NRC and the Pennsylvania Public Utility Commission." 65 Fed. Reg. 30550 (May 12, 2000) (discussing petition for rulemaking brought by plaintiff, which was ultimately denied. *See* 66 Fed. Reg. 37432 (July 18, 2001)). The legal and regulatory proceedings in which Mr. Epstein has participated include the following: *Re: PPL Utilities Corp. Rulemaking Proceeding*, No. 00973954, 2001 WL 471880 (Pa. P.U.C. Jan. 24, 2001); *Re: PPL Elec. Utilities Corp.*, No. M-FACE9908, 2000 WL 33300055 (Pa. P.U.C. Dec. 20, 2000); *Application of Pennsylvania Power & Light Co. for Approval of Restructuring Plan*, No. R-00973954, 1998 Pa. PUC LEXIS 197 (August 27, 1998); *Sierra Club, et al. v. Pennsylvania Public Utility Comm'n*, 702 A.2d 1131 (Pa. Commw. Ct. 1997), *aff'd*, 557 Pa. 11, 731 A.2d 133 (1999); *Pennsylvania Public Utility Comm'n v. Pennsylvania Power & Light Co.*, Nos. R-00943271C001-C0145, 1995 Pa. PUC LEXIS 189 (Sept. 27, 1995); *In the Matter of General Public Utilities Nuclear Corp. (Three Mile Island Nuclear station, Unit 2)*, No. 50-320-OLA-2, 36 NRC 227, 1992 NRC LEXIS 48 (October 16, 1992). He also intervened to oppose PECO's application for approval of its merger with Unicom (to create Exelon). Complaint, ¶ 4(e). The proceeding was ultimately settled. *Id.* As these matters collectively demonstrate, for years Mr. Epstein has

plaintiff's lack of familiarity with the applicable pleading standards (which, on the contrary, he appears to understand quite well, *see* Pl. Opp. at 1). Rather, plaintiff's failure to identify a single environmental consequence of the Amendment is a result of the nature of the agreement itself, which merely allocates financial responsibility for DOE's contractual breach. A *pro se* plaintiff, like any other, may "plead himself out of court" by pleading facts that undermine the allegations in his complaint, or that demonstrate that he has no claim. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999), *cert. denied*, 530 U.S. 1241 (2000).[5] So it is in this case. There is simply no cognizable claim under NEPA in these circumstances, and that would be true no matter who drafted the complaint.

## II. THE PUBLIC CONTRACTS EXEMPTION TO APA RULEMAKING PROCEDURES APPLIES TO THE DOE TODAY

In their opening briefs, the defendants and Exelon both explained that the plaintiff's APA claim should be dismissed because the Amendment involves a matter relating to "public property, loans, grants, benefits or contracts," and is thus

---

played a role in sophisticated and complex legal matters involving multiple parties and literally billions of dollars.

[5] *See also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (despite liberal pleading standard, "*pro se* plaintiffs are not automatically entitled to take every case to trial"); *Hall v. Bellmon*, 953 F.2d 1106, 1110 (10th Cir. 1991) ("The broad reading of the [pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," and "conclusory allegations without supporting factual averments are insufficient to state a claim for . . . relief . . . .").

exempted from the notice-and-comment procedures of the APA. Exelon Br. at 14-15, Def. Br. at 7-9; 5 U.S.C. § 553(a)(2). Citing to former section 501(b)(3) of the DOE Organization Act (former 42 U.S.C. § 7191(b)(3)), plaintiff argues that the DOE is statutorily barred from asserting the public-contracts exemption to the rulemaking procedures prescribed by the APA. Pl. Opp at 2-3. Although Section 501(b)(3) previously stated that the exemptions contained in 5 U.S.C. § 553(a)(2) would not be available "[f]or purposes of this title," (42 U.S.C. § 7191 (1994)), that section was repealed by Congress in July of 1997.[6]

---

[6] Plaintiff also cites one unreported district court case that held that DOE was required to comply with notice-and-comment procedures in promulgating certain physical fitness standards for security personnel at DOE's nuclear facilities, and which cited the now-repealed § 501(b)(3). Pl. Opp. at 2 (citing *Local Union Nos. 21, 27, 37, 1, 64, 38, 14, 3, and 65, Int'l Guards Union of America v. Hodel*, No. C-83-152-JLQ, 1984 U.S. Dist. LEXIS 18844 (D. Wash. March 7, 1984)). Because the cited statute has now been repealed, this case does not support plaintiff or militate against dismissal here. Indeed, when properly read, the case further illustrates why the APA does not apply in this case. In ruling that the regulations were not exempt from the APA procedures, the *Local Union 21* court held that the standards at issue were not rules of individual application because they "would apply to all of DOE's nuclear facilities." *Id.* at **9-10. The legislative history of former § 501(b)(3) stated that "'Department actions which dispose of individual applications rather than adopt general rules will *not* be subject to these procedural requirements.'" *Id.* at *10 n.4 (quoting H.R. Rep. No. 95-539, 95th Cong. 1st Sess. 83 (1977), *reprinted in* 1977 U.S. Code. Cong. Ad. News, 925, 954) (emphasis supplied). Thus, even under the former § 501(b)(3), the Amendment at issue in this case would not have been subject to the APA, because it amends a single contract with a single party. Finally, at least one court of appeals opined that DOE regulations relating to public property were exempt from APA notice-and-comment procedures even while former § 501(b)(3) was still in effect. *See Common Cause v. DOE*, 702 F.2d 245, 247 n.10 (D.C. Cir. 1983).

7

According to the legislative history accompanying the repeal, the former Section 501(b)(3) was "an unusual 'exemption to an exemption' that subject[ed] DOE to rulemaking on public property, grants, contracts, and loans to the Administrative Procedure Act (APA), notwithstanding the exemption for such matters contained in the APA." S. Rep. No. 105-26, at 2 (1997). There was no apparent rationale for this "anomalous provision," which was ultimately stricken during the 1997 congressional rewrite of the DOE Act prompted by court decisions on other issues. *Id.* at 3, 7.

The fact that the DOE in 1983 employed notice and comment procedures for the initial Standard Contract is even more unremarkable when this repealed DOE-specific statutory scheme is considered. As Exelon previously explained (Exelon Br. at 15), the original Standard Contract was an across-the-board industry proposal that is quite unlike the Amendment. Once adopted, the Standard Contract was going to be effectively mandatory for the entire industry. By contrast, possible subsequent settlements regarding DOE's spent fuel performance failures (even if patterned on the Amendment) will be unique, individually-negotiated deals. Even beyond that, however, there was a separate anomalous statutory obligation unique to DOE that arguably applied in 1983, but which indisputably does not exist now. The fact that DOE used notice-and-comment procedures for the original Standard

Contract in no way supports the argument that the DOE was required to do so for the Amendment.

The current provision that appears at 42 U.S.C. § 7191(b)(3) (Supp. IV 1998) does not relate to the subject of the APA exemptions at all, but, rather, states that a transcript should be kept of certain oral presentations regarding rules and regulations described in a preceding subsection. There is no current restriction on DOE's ability to invoke the public-contracts exemption of the APA, which is fully applicable in this case. As a result, plaintiff fails to state a claim under the APA, and Count II of the complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Exelon's opening brief, Defendants' Motion to Dismiss should be granted, and the complaint should be dismissed in its entirety.

1-WA/1650531.1

Respectfully submitted,

*Vincent Candiello/gnp*

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101
(717) 237-4014

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1800 M Street, N.W.
Washington, D.C. 20009
(202) 467-7191

Of Counsel:
Edward J. Cullen, Jr.
Jeffrey J. Norton
Exelon Corporation
2301 Market Street
Philadelphia, PA 19103

August 3, 2000

1-WA/1650531.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2001, I caused a copy of Intervenor Exelon's Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, to be served by first-class mail, postage prepaid, to the following:

Eric J. Epstein
4100 Hillsdale Road
Harrisburg, PA 17112

John P. Almeida
U.S. Department of Justice
Environmental & Natural
Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044

_____
G. Scott Paterno

1-WA/1654091.1