ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC J. EPSTEIN | : | CIVIL ACTION NO. CV-010682 |
| Plaintiff, | : | |
| v. | : | (JUDGE YVETTE KANE) |
| SPENCER ABRAHAM, et al. | : | FILED HARRISBURG |
| Defendants. | : | MAY 0 3 2002 |
| | | MARY E. D'ANDREA, CLERK |
| | | Per _____ DEPUTY CLERK |

**INTERVENOR EXELON'S RESPONSE
TO ORDER REGARDING ADDITIONAL BRIEFING**

Intervenor Exelon Generation Company, LLC (Exelon) respectfully submits this response to the Court's order dated April 3, 2002.

The jurisdiction and standing matters identified by the Court provide additional grounds for dismissal of the complaint in this case. Exelon's specific responses to the issues posed by the Court are as follows.

1782399.1

*Issue 1: Jurisdiction. Does the Nuclear Waste Policy Act, 42 U.S.C. § 10139(a) prevent this Court from exercising jurisdiction over Count One of Plaintiff's complaint? Does § 10139(a) preclude jurisdiction over Count Two?*

The answer to both questions is "yes." The portion of the Nuclear Waste Policy Act (NWPA) providing for "original and exclusive" jurisdiction in the Courts of Appeal constitutes an additional reason for dismissal of both counts of the complaint in this case. Section 119(a) of the NWPA, codified at 42 U.S.C. § 10139(a)(1), provides in part that United States Courts of Appeal

> shall have original and exclusive jurisdiction over any civil action—
>
> (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part;
>
> (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part;
> . . .
>
> (D) for review of any environmental impact statement prepared pursuant to the National Environmental Policy Act of 1969 (42 U.S.C. § 4321 et seq.) with respect to any action under this subtitle, or as required under section 135(c)(1), or alleging a failure to prepare such statement with respect to any such action.

These provisions apply to both counts of the complaint, and preclude this Court from exercising jurisdiction over this matter.

<u>Count One</u>. First, it is clear that Count One of plaintiff's complaint purports to challenge the "failure to prepare" an environmental impact statement with

2

respect to an action under the NWPA, as contemplated by 42 U.S.C. § 10139(a)(1)(D). Indeed, the very first page of the complaint asserts that the challenged contract amendment was not the "subject of an Environmental Impact Statement – a legal requirement for actions affecting the human and natural environment." Complaint at p. 1; *see also* Complaint ¶ 36 ("The Department of Energy failed to prepare an Environmental Impact Statement prior to entering into the Amendment to the Contract."). Count One of the complaint explicitly purports to invoke the provisions of NEPA referenced in the exclusive jurisdiction provisions of 42 U.S.C. § 10139(a)(1)(D), *e.g.,* Complaint ¶¶ 38, 53-55, as well as regulations promulgated under those provisions. Complaint ¶¶ 39, 40, 41.

Second, the amendment to the contract, like the entry of the Standard Contract itself, was undertaken by the Department of Energy pursuant to the ultimate authority granted by the NWPA.[1] Section 302 of the Act authorizes the Secretary to enter into Standard Contracts. 42 U.S.C. § 10222. While claims for breach of those contracts fall within the jurisdiction of the Court of Federal Claims

---

1/  The reference to "under this part" in the codified judicial review provision of Section 119 has been held not to remove review of any actions under the NWPA from the "exclusive jurisdiction of the courts of appeals." *General Electric Uranium Management Corporation v. United States Department of Energy*, 764 F.2d 896, 901 (D.C. Cir. 1985). Rather, the separation of the review provision from other substantive matters of the Act, such as contractual and fee provisions in Subchapter III, was "pure happenstance and in no way indicates a congressional intent that review under different subchapters be governed by different standards." *Id.,* 764 F.2d at 903.

3

and therefore outside of the Courts of Appeal,[2/] Mr. Epstein is of course not a party to the Standard Contract, and this does not purport to be a breach-of-contract action. Exelon does not concede that the DOE would ever be required to perform an environmental assessment in connection with a specific utility's fuel-related activities—as explained at pages 12-13 of our opening brief, such matters fall within the exclusive jurisdiction of the Nuclear Regulatory Commission, and for that reason (among others) the complaint is deficient on the merits. Nevertheless, given that the complaint purports to directly attack the DOE's execution of the contract amendment, for these purposes those claims cannot fairly be said to be based on anything other than an action by DOE under the NWPA, as contemplated by Section 119, 42 U.S.C. § 10139(a)(1)(D).

Third, the cases confirm that the "original and exclusive" jurisdiction provision in the NWPA means what it says, and that Federal district courts may *not* exercise jurisdiction over matters covered by 42 U.S.C. § 10139(a). In *General Electric Uranium Management Corporation v. United States Department of Energy*, 764 F.2d 896 (D.C. Cir. 1985) ("*GEUMCO*"), for example, the D.C. Circuit undertook an exhaustive analysis of the text, legislative history, and policy implications of Section 119, in that case in the context of a challenge to the

---

2/    *E.g.*, *Wisconsin Electric Power Company v. United States Department of Energy*, 211 F.3d 646, 648 (D.C. Cir. 2000); *Northern States Power Company v. United States*, 224 F.3d 1361, 1366 (Fed. Cir. 2000).

4

Department of Energy's implementation of a one-time fee rule under the Standard Contracts. *See* 764 F.2d at 900-904. The court held that the "court of appeals has original and exclusive jurisdiction . . . and that the District Court lacked subject matter jurisdiction to consider the instant case." 764 F.2d at 904. Similarly, in *State of Tennessee v. Herrington*, 806 F.2d 642 (6th Cir., 1986), the court addressed a challenge to a DOE proposal for a monitored retrievable storage facility. Upon a review of the legislative history and statutory structure as a whole, the court concluded that original jurisdiction lay with the courts of appeal, and reversed the district court's ruling that it could exercise jurisdiction. 806 F.2d at 648-49. *See also Wisconsin Electric Power Company v. Department of Energy*, 778 F.2d 1, 2 (D.C. Cir. 1985) (in action involving whether fee would be imposed on generated electricity versus electricity sold, "[w]e hold, based on *GEUMCO*, that the district court correctly concluded that it lacked jurisdiction.").

Beyond NWPA, cases interpreting "original and exclusive" jurisdictional provisions in other statutes have similarly held such provisions to divest federal district courts of jurisdiction. *E.g., California v. Arizona*, 440 U.S. 59, 63 (1979) (under 28 U.S.C. § 1251(a), the "district court could not hear the claims against Arizona, because this Court has exclusive jurisdiction over such claims."). To the extent that there is any ambiguity as between original jurisdiction in this Court or the court of appeals, it is frequently noted that doubts are to be "resolved in favor

5

of the latter." *E.g., Denberg v. United States Retirement Board*, 696 F.2d 1193, 1197 (7th Cir. 1983). Substantial public policies relating to efficiency and avoidance of duplication support this preference.[3/] These general principles further confirm the propriety of dismissal here.

*Count Two*. The above analyses and authorities also establish the Court's lack of jurisdiction to entertain plaintiff's purported administrative procedure claim, stated in Court Two. In that count, the plaintiff alleges that DOE was required to undertake rulemaking procedures under the Administrative Procedures Act, prior to amendment of the Exelon Standard Contract. *E.g.,* Complaint ¶ 56. On a consistent basis, courts of appeal have reviewed challenges to DOE administrative procedures undertaken in connection with high level waste activities under the direct "original and exclusive" jurisdictional provisions of Section 119, 42 U.S.C. § 10139(a). In *National Association of Regulatory Utility Commissioners v. U.S. Department of Energy*, 851 F.2d 1424 (D.C. Cir. 1988) (*NARUC*), for example, the petitioners claimed that the DOE's methodology for calculating the impact on fees due to waste generated by government defense

---

3/    See, e.g., *General Electric Uranium Management Corporation v. United States Department of Energy*, 764 F.2d 896, 904 n. 40 (D.C. Cir. 1985), citing Schorr, *The Form for Judicial Review of Administrative Action: Interpreting Special Review Statutes*, 63 B.U.L. Rev. 763 (1983); Currie & Goodman, *Judicial Review of Administrative Action: Quest for Optimum Forum*, 75 Colum. L. Rev. 1 (1985); Note, *Jurisdiction to Review Administrative Action: District Court or Court of Appeals*, 88 Harv. L. Rev. 980 (1975).

6

activities should have "proceed[ed] by rulemaking" under the Administrative Procedure Act, and the D.C. Circuit exercised direct and original review. 851 F.2d at 1429-32. While the government contract element of Mr. Epstein's claim is somewhat different from the *NARUC* claim on the merits (and renders the APA inapplicable here), for these purposes the Count Two claim presents precisely the same sort of "should have proceeded by rulemaking" procedural challenge. This Court is without jurisdiction to entertain such claims.

In sum, Section 119 of the NWPA, 42 U.S.C. § 10139(a)(1)(D), precludes this Court from exercising jurisdiction over plaintiff's claims. The complaint should be dismissed by this Court.

***Issue 2: Standing. Does the Plaintiff have standing to bring Count One of his Complaint under the National Environmental Policy Act, 42 U.S.C. § 4331-32? More specifically, can standing be asserted under the APA, 5 U.S.C. § 702, to challenge the failure to conduct an Environmental Impact Statement?***

The answer in the circumstances of this case is "no." While standing is theoretically available to an individual under NEPA and the APA where the requisite injury and causation are alleged, the plaintiff's complaint in this case fails to do so. Accordingly, plaintiff's lack of standing presents another basis for dismissal of Count One.

Exelon has previously explained that the contract amendment will not have any physical effect on the environment. *See* Intervenor's Memorandum of Law In

7

Support of Motion to Dismiss dated July 2, 2001 ("7/02/01 Exelon Mem.") at 8-13. As a result, the complaint not only fails to state a claim under NEPA on the merits, it also fails to demonstrate that Mr. Epstein has the requisite standing to challenge DOE's decision not to prepare an Environmental Impact Statement before executing the Amendment.

Because NEPA does not itself provide a private right of action, plaintiffs often seek judicial review of agency actions that allegedly violate NEPA under the APA. Such plaintiffs must show that they have been adversely affected or aggrieved within the meaning of NEPA by some final agency action. *E.g., Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996) (en banc) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882-83 (1990)). At a minimum, in order to be "adversely affected" under NEPA, the plaintiff must demonstrate that his particularized injury is to an interest that falls within the zone of interests that NEPA was designed to protect, *and* that he can satisfy all constitutional standing requirements. *E.g., Florida Audubon Soc'y*, 94 F.3d at 665. To satisfy the constitutional standing requirements, in turn, a plaintiff must show (1) that he has suffered an injury in fact; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 504, 560-61 (1992) ("*Defenders of Wildlife*"); *AT&T Communications of*

8

*New Jersey, Inc. v. Verizon New Jersey, Inc.*, 270 F.3d 162, 170 (3d Cir. 2001). The party purporting to invoke federal jurisdiction bears the burden of establishing the elements of standing. *Defenders of Wildlife*, 504 U.S. at 561. Plaintiff's complaint in this case fails to establish the requisite causation.

The "injury in fact" prong of the standing inquiry is met only if the alleged injury is concrete and particularized, as well as "actual or imminent, not 'conjectural' or 'hypothetical.'" *Defenders of Wildlife*, 504 U.S. at 560 (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984)). The law is clear that "a plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy." *Defenders of Wildlife*, 504 U.S. at 573. This is especially important in cases where the complaint alleges that the agency has failed to follow the environmental review procedures imposed by NEPA. In such cases, "[t]he mere violation of a procedural requirement . . . does not permit any and all persons to sue to enforce the requirement." *Florida Audubon Soc'y*, 94 F.3d at 664. Rather, in NEPA cases the plaintiff must show that the agency action taken without preparation of an EIS "will cause a distinct risk to a particularized interest of the plaintiff." *Florida Audubon Soc'y,* 94 F.3d at 664, 666-67. The failure to prepare an EIS alone is not sufficient. *Id.* at 668-69.

9

In this case, the only plausible basis for standing alleged in the complaint is the assertion by Mr. Epstein that he "resides and works within a region which is adversely impacted by health and safety risks related to the storage of high-level radioactive waste from the Peach Bottom Nuclear Generating Facility and [the Three Mile Island facility (TMI)]." Complaint at ¶ 4(a). [4]

---

[4] Mr. Epstein also alleges that he is a "PECO Energy shareholder and the Amendment *may* adversely impact the [his] financial interests," but he does not indicate how the contract amendment will harm these interests, or when such harm will occur. Complaint at ¶ 4(b) (emphasis added). This vague and conclusory allegation is nothing more than an assertion of potential future injury and, as such, it does not satisfy the injury-in-fact test. *See, e.g., Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir. 1993). Moreover, even if Mr. Epstein could plead or show that he faced actual or imminent harm to his financial interests as a result of the contract amendment (which he could not, because the fact of the matter is that the amendment benefits Exelon shareholders), his NEPA claim would still have to be dismissed because such economic interests do not fall within the "zone of interests" that NEPA was intended to protect. *See, e.g.,* Daniel R. Mandelker, NEPA Law and Litigation § 4.06[3][g] at 4-38 (2d ed. 2001). Finally, the miscellaneous assertions by Mr. Epstein regarding his prior involvement in various unrelated nuclear watchdog activities, Complaint ¶ 4(c)-(g), cannot conceivably establish standing in this case.

10

It is clear from the complaint, however, that there is no causal connection between an alleged injury regarding purported health and safety risks associated with storage of spent fuel at the Peach Bottom site on the one hand, and the contract amendment challenged in this case on the other. The causation prong of the constitutional standing analysis requires the plaintiff to show that the injury in fact is "fairly traceable" to the challenged action of the defendant. *Defenders of Wildlife*, 504 U.S. at 560. To demonstrate standing in a procedural-rights case such as this, the plaintiff must show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the substantive action by the government that allegedly breached the procedural requirement will cause injury to the plaintiff's own interest. *See Florida Audubon Soc'y*, 94 F.3d at 668-69. More specifically, in a NEPA case there must a causal connection between the government action that allegedly required an EIS and an increased risk of injury to the plaintiff's particularized interest. *Florida Audubon Society*, 94 F.3d at 664 (citing *Defenders of Wildlife*, 504 U.S. at 572 n.7); *but see Committee to Save Rio Hondo v. Lucero*, 102 F.3d 445, 451-52 (10th Circuit 1996) (likelihood of harm should be analyzed under injury-in-fact prong, not causation). As the D. C. Circuit explained:

> To prove causation, a plaintiff seeking the preparation of
> an EIS must demonstrate that the particularized injury
> that the plaintiff is suffering or is likely to suffer is fairly

11

> traceable to the agency action that implicated the need for an EIS. In other words, unless there is a substantial probability . . . that the substantive agency action that disregarded a procedural requirement created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing.

*Florida Audubon Soc'y*, 94 F.3d at 669 (citation omitted).

In this case, Mr. Epstein cannot demonstrate the requisite causal nexus between the DOE's execution of the contract amendment and the purported health and safety risks related to the storage of high-level waste from Peach Bottom. As explained in Exelon's initial brief, the contract amendment will have no effect whatsoever on the physical environment, but simply re-allocates financial responsibility for the storage of spent fuel in light of DOE's breach of its obligations. *See* 7/02/01 Exelon Mem. at 6-7, 10-11. Thus any risks caused by the presence of spent fuel at Peach Bottom were present before the contract amendment was executed, and would continue to exist even in the absence of such an agreement.[5/] The amendment itself is not responsible for the fact that waste is

---

5/  Indeed, the health and safety risks arising from the storage of spent fuel at Peach Bottom have already been assessed. The NRC granted a general license to all utilities possessing operating licenses to store spent fuel generated on site in an independent spent fuel storage installation (ISFSI) after determining that there would be no significant effect on the environment that had not already been assessed at the operating license application stage or in the independent certification of spent fuel storage casks. *See* 7/02/01 Exelon Mem. at 12 (citing 55 Fed. Reg. 29,181, 29,190). Because an EIS was prepared in connection with the

present at the site, and it does not impede or affect removal of the waste. In short, any claimed injury relating to health and safety risks posed by storage of spent nuclear fuel at Peach Bottom is not fairly traceable to DOE's execution of the contract amendment. All that is left is the naked procedural assertion that an EIS was not prepared, and that is not sufficient. *E.g., Florida Audubon Soc'y,* 94 F.3d at 668-69.

---

original operating license, Mr. Epstein cannot complain that the environmental effects of on-site spent fuel storage have not been analyzed.

## CONCLUSION

For the foregoing reasons, the jurisdictional and standing issues identified by the Court require dismissal of the complaint. Should the Court disagree and determine to reach the merits, the complaint should still be dismissed, because, as set forth in Exelon's prior briefs: (1) NEPA is not implicated, as the challenged settlement agreement will not affect the environment in any way; and (2) the APA was not violated due to the exemption for public contracts such as the one at issue in this case.

Respectfully submitted,

Of Counsel:
Edward J. Cullen, Jr.
Jeffrey J. Norton
Exelon Corporation
2301 Market Street
Philadelphia, PA 19103

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101
(717) 237-4014

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5191

May 3, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2001, I caused a copy of Intervenor Exelon's Response to Order Regarding Additional Briefing to be served by first-class mail, postage pre-paid, on the following:

Eric J. Epstein
4100 Hillsdale Road
Harrisburg, PA 17112

John P. Almeida
U.S. Department of Justice
Environmental & Natural
Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044

_____
G. Scott Paterno