FILED
HARRISBURG, PA

MAY 21 2002

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

# In the United States District Court for the Middle District of Pennsylvania

ERIC JOSEPH EPSTEIN,
    Plaintiff

v.

SPENCER ABRAHAM, Secretary, U.S. Department of Energy; HERBERT D. WATKINS, Contracting Officer, United States Department of Energy

    Defendant

and

EXELON GENERATION COMPANY, LLC

    Intervenor

Civ. No. 01-0682
Judge Kane

## PLAINTIFF'S SUPPLEMENTAL ANSWER IN OPPOSITION TO DEFENDANTS' AND INTERVENOR'S MOTION TO DISMISS

I. Introduction

On April 19, 2001, the Plaintiff filed a Complaint in the above captioned action. The Plaintiff's Complaint alleged that the Defendants had violated the National Environmental Policy Act, 42 U.S.C. §4331 et seq. ["NEPA"] and the Administrative Procedure Act, 5 U.S.C. §550 ["APA"] by failing to prepare an Environmental Impact Statement ["EIS"] and publish notice of a judicial settlement between Exelon Generation Company and the Department of Energy in the Federal Register. That judicial settlement took the form of a contract amendment between Exelon and the DOE which greatly expanded the rights of Exelon at the expense of the Plaintiff, who lives and works near Exelon owned nuclear facilities, and who has been heavily involved in the issue of decommissioning the corporation's nuclear stations.

On June 18, 2001, the Defendants filed a 12(b)(6) Motion to Dismiss the complaint. On July 17, 2001, the Plaintiff filed a Brief in Opposition to the Motion to Dismiss, and on August 1, 2001, the Defendants filed a Reply.

On April 3, 2002, this Court issued an Order requesting that the parties brief two issues to enable this Court to rule on the Defendants' Motion to Dismiss. Those two issues include (1) whether the Nuclear Waste Policy Act ["NWPA"] prevents this Court from exercising jurisdiction over the two Counts of the Plaintiff's Complaint, and (2) whether the Plaintiff has standing to bring Count One of his Complaint. *See* Order of April 3, 2002.

On or about May 3rd, in response to the Court's Order, the Defendants filed a Supplemental Memorandum in support of Federal Defendants' Motion to Dismiss. On that same date, Intervenor Exelon Corporation filed a Response to Order Regarding Additional Briefing.

Through this document, the Plaintiff files a Supplemental Answer in Opposition to the Motion to Dismiss.

<u>II. Section 10139 of the Nuclear Waste Policy Act Does Not Prevent this Court from Exercising Jurisdiction Over the Plaintiff's Complaint Because the Settlement Agreement Entered Into by the Defendants Did Not Arise "Under" the Act Nor Were the Defendants Required to Enter into the Settlement Agreement "by Virtue" of the Act.</u>

The Contract "amendment" at issue in this litigation is a settlement of legal claims arising from the U.S. Court of Appeals for the District of Columbia Circuit's decision in *Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), *cert denied* 119 S. Ct. 540 (1998). In that decision, the Circuit Court declared that PECO Energy Company (now part of Exelon Generation Company) was entitled to seek damages from the United States to compensate the utility for costs incurred as a result of the Department of Energy's [DOE's] delay in locating and permitting a high level radioactive waste disposal site.

In response to that ruling, the Department of Energy and PECO Energy Company agreed to enter into a settlement agreement to extinguish the Company's legal claim against the Department. The parties agreed to codify the settlement agreement as an amendment to the standard contract originally entered into between the Department of Energy and all nuclear utilities. The amendment thus provided compensation to the utility for the losses incurred as a result of DOE's avoidable delays in siting a permanent repository for waste generated by the utility.

Indeed, the "Amendment to Contract" bluntly explains the reason for the Amendment, declaring that

> DOE and PECO Energy hereby agree that settlement of PECO Energy's potential claim, by this Amendment of the 44405 Contract, is in the interest of both parties.

See *Amendment to Contract DE-CR01-83 NE44405 Between U.S. Department of Energy and PECO Energy Company* at 2.

> In return for the settlement agreement, the utility expressly
>
> releases and discharges DOE from any and all claims it may have arising. . . [from] DOE's delay in performance of its disposal obligations for Peach Bottom SNF/HLW. . . the [utility] waives any right it may have to submit a claim or file suit for any remedy, either legal or equitable, based upon DOE's delay in performance of its January 31, 998 disposal obligation.

*Id.* at Article XI.

Among other items, part of the amendment included the release of all legal claims by the utility against the DOE (*Id.* at Article XI, p. 15); obligated the DOE to provide additional monetary payments to the utility if more favorable agreements were reached with other owners of nuclear facilities (*Id.* at Article IV, p. 6); enabled the utility to exchange Peach Bottom removal allocation credits with other nuclear units or other purchasers, thus establishing a trading regime among the utilities for high level waste and spent nuclear fuel (*Id.* at Article V); and enabled the utility to use the Peach Bottom facility to store an unlimited amount of spent fuel and high level radioactive waste from other facilities. *Id.*

In a nutshell, the Amendment which codified the settlement granted broad new rights and monetary compensation to PECO Energy Company in return for the Company's agreement to relinquish all legal claims against the Department for the DOE's "avoidable delay" in disposing of the Company's high level radioactive waste and spent nuclear fuel. As such, the settlement could have taken the form of a separately enforceable discharge of claims; instead, the DOE chose to codify the settlement agreement into an Amendment to the standard contract used for waste disposal.

Section 10139 of the Nuclear Waste Policy Act of 1982 ["NWPA"], 42 U.S.C. §10101 *et seq.*, grants original and exclusive jurisdiction to United States courts of appeals in civil actions brought to review "any final decision or action of the Secretary, the President, or the Commission under" the Act or which alleges the failure of the Secretary to "make any decision, or take any action, required under" the Act, or which seeks review of the "failure to prepare" an environmental impact statement "with

-3-

respect to any action under" the Act. *See* 42 U.S.C. §10139(a)(1).

In one of the few Circuit Court cases interpreting the scope of §10139, the Ninth Circuit Court of Appeals has ruled that District Courts are the proper fora for challenges to agency action (or non-action) unless the challenged action arises "under" the NWPA, in which case the Circuit Courts of Appeal have original jurisdiction.

In that case, *Natural Resources Defense Council, Inc. v. Abraham*, 244 F.3d 742 (9th Cir. 2001), the Circuit Court examined a challenge brought against the Department of Energy which contended that the DOE's declassification of certain types of high level waste constituted an illegal exercise of the DOE's statutory powers. *Id.* at 742. Brought originally in the Ninth Circuit Court of Appeals, the DOE argued that the Court of Appeals lacked jurisdiction over the challenge, and that the case should have been brought in the appropriate United States District Court.

While acknowledging that the "NWPA's judicial review provisions are not a model of clarity", the Court focused its inquiry on whether the DOE's declassification of wastes was a decision made "under" the provisions of the NWPA and thus subject to review solely under the original jurisdiction of the Circuit Courts. *Id.* at 743-44. While the DOE decision clearly impacted the provisions of the NWPA - because Congress "created a comprehensive scheme for the interim storage and permanent disposal of high-level radioactive waste" through the NWPA, and the DOE decision declassified certain types of high level radioactive waste into low level waste - the Court determined that the DOE's decision did not arise "under" the NWPA because the Department relied on other legal authority for the issuance of its decision. *Id.* at 744-745.

Citing to *Tennessee v. Herrington*, 806 F. 2d 642 (6th Cir. 1986), the Court noted that another appropriate test to determine jurisdiction was to determine whether the DOE's challenged conduct was "required by virtue of any section of [the] NWPA." *Id.* at 747. The Court proceeded to determine that the decision by DOE was not "required" by the NWPA and thus, that DOE's decision did not arise "under" the NWPA.

-4-

The Circuit Court of Appeals therefore determined that jurisdiction was properly laid within the appropriate United States District Court.

The United States Court of Appeals for the District of Columbia Circuit has devised a similar test to determine whether a challenge brought to review a section of DOE's standard contract with nuclear utilities was properly filed in a U.S. District Court. In that case, *Wisconsin Electric Power Company v. Hodel*, 626 F. Supp. 424 (D.D.C. 1984), the nuclear utility challenged the DOE's establishment of a fee - within the standard contract promulgated by the agency - to be paid by utilities for the disposal of high level radioactive waste. *Id.* at 424-425.

In making its determination that the proper jurisdiction for the suit was the Circuit Court of Appeals, the District Court first examined the language of the NWPA's section on jurisdiction, somberly declaring that "[n]either the numbering, placement or cross referencing of this statute reflect model draftsmanship." *Id.* at 426. The Court then determined that since the challenge by the utility was made directly to the standard disposal contract devised by the DOE pursuant to the NWPA, that the DOE's actions arose *under* the NWPA - and were required by virtue of the Act - and thus, were subject to the jurisdictional requirement of §10139 of the Act. *Id.* at 426-427.

In the instant case, it is clear that the settlement of claims between the DOE and PECO Energy Company was purely a result of the DOE's "avoidable delays" in accepting PECO's high level waste ( constituting a breach of contractual promises), and the desire of the agency to avoid being sued by the Company. As such, the settlement agreement - which the DOE chose to codify as an Amendment to the standard contract, did not arise "under" the Act, nor was the DOE required to settle the legal claims "by virtue of" the provisions of the NWPA.

Indeed, whereas the original standard contract - subject to agency rulemaking - certainly arose "under" the NWPA, and the DOE was required "by virtue" of the NWPA to contract with individual nuclear utilities to carry into effect the provisions of

the Act, the decision by the DOE to enter into the Amendment to the Contract was simply a decision to settle legal claims arising from the *Northern States Power* litigation. Unlike the standard contract, the Amendment was solely the product of an agreement with only one utility - PECO Energy Company - and the Amendment altered the standard contract solely to extinguish any legal claims held by the Company against the DOE as a result of the Department's "avoidable delay" in disposing of the Company's high level radioactive waste.

Thus, under the tests enunciated in *NRDC*, *Wisconsin Electric Power*, and *Herrington*, the Amendment to the standard contract at issue in this case is not subject to §10139 of the NWPA because the DOE's decision to enter into the Amendment did not arise under, nor was it required by, the NWPA. The purpose of the Amendment was solely to avoid a lawsuit against the agency seeking to collect damages by the nuclear utility. Therefore, both Counts of the Plaintiff's complaint - which challenge the DOE's decision not to prepare an Environmental Impact Statement, and the DOE's decision not to notify the public of the pending Amendment - are not subject to §10139.

As such, jurisdiction over this challenge to the agency action is properly exercised by the U.S. District Court for the Middle District of Pennsylvania.

III. <u>The Plaintiff has Standing to Challenge the Department of Energy's Failure to Prepare an Environmental Impact Statement for the Amendment to the Contract.</u>

The Administrative Procedure Act ["APA"] establishes a right of review for persons affected by agency action. The Act specifically provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" is "entitled to judicial review thereof." 5 U.S.C. §702. In exercising review under the APA, the reviewing court is authorized to "compel agency action unlawfully withheld or unreasonably delayed" and "set aside agency action. . . found

-6-

to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706.

It is well-settled law that the failure of an agency to prepare an Environmental Impact Statement - or other environmental evaluations required by the National Environmental Policy Act - can be challenged under the provisions of the Administrative Procedure Act. *See The Township of Lower Alloways Creek v. Public Service Electric & Gas Company*, 687 F.2d 732 (3rd Cir. 1982) (alleging failure of the Nuclear Regulatory Commission to prepare an environmental impact statement prior to approving an expansion of a nuclear reactor spent fuel pool); *See, e.g., San Francisco Tomorrow v. Romney*, 472 F. 2d 1021 (9th Cir. 1973) (declaring that an individual had standing to enjoin construction of project based upon the agency's failure to prepare an environmental impact statement); *Oregon Natural Desert Ass'n v. Green*, 953 F. Supp. 1133 (D.Or. 1997) (holding that environmental group had standing to challenge the Bureau of Land Management's failure to prepare an environmental impact statement).

To determine whether Plaintiffs have standing to challenge agency action - or agency inaction - under the National Environmental Policy Act, courts have turned to the general standing inquiry enunciated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). In that case, the Supreme Court declared that a plaintiff must have suffered (or will suffer) an injury, that there must be a "causal connection" between the injury and the action of the agency, and the injury must be redressable by the court. *Id.* at 2136. In addition, the Supreme Court has declared that the injury suffered must fall within the "zone of interests" that NEPA was designed to protect. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883 (1990).

The Supreme Court has also held that a plaintiff may have "procedural standing to sue" if the plaintiff has been "accorded a procedural right" and if the plaintiff has a "concrete interest "which is threatened. *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2142. *See also Douglas County v. Bruce Babbitt, et al.*, 48 F. 3d 1495 (9th Cir. 1995).

-7-

Plaintiff has asserted standing interests in his Complaint which meet or exceed each of these judicial tests for standing. In addition, the Plaintiff has filed an Affidavit, attached to this Supplemental Brief as Exhibit "A", which further specifies both the procedural and substantive injuries caused to the Plaintiff as a result of the failure of the DOE to prepare an Environmental Impact Statement for this Contract Amendment and the DOE's failure to advertise the preparation of the Contract Amendment in the Federal Register.

By itself, the Plaintiff's Complaint satisfies the standing inquiry. This Court's standard of review of a 12(b)(6) Motion must assume that all facts plead in the Complaint are true, and then determine whether the Plaintiff has failed to state a claim. In his Complaint, the Plaintiff has asserted several concrete injuries that he has suffered - and will suffer - as a result of the settlement agreement between the DOE and PECO Energy Company. Those include injuries attributable to the Plaintiff's close physical proximity to the Peach Bottom Atomic Power Station and Three Mile Island Nuclear Generating Facility. Under the Amendment to the Contract, Exelon Generation Company may now transfer high level radioactive waste to any of its fleet of ten nuclear generating stations (comprising 17 units) in three states, or sell its "early number" in the high level nuclear waste lottery to any company that possesses a place at the end of the priority list - i.e. those companies which obtained a nuclear license at a more recent date. Those changes to the standard contract place the Plaintiff at increased risk of a release of radiation from storage casks used, in the interim, to store radioactive waste outside of the containment facility.

Indeed, under the NWPA, Congress has specifically declared that "radioactive waste creates potential risks and requires safe and environmentally acceptable methods of disposal" and that "high-level radioactive waste and spent nuclear fuel have become major subjects of public concern, and appropriate precautions must be taken to ensure that such waste and spent fuel do not adversely affect the public health and safety and

the environment for this or future generations." 42 U.S.C. §10131. The entire thrust of the Act - to provide for a permanent long-term repository for nuclear waste - constitutes an understanding that interim long-term storage at each of the nuclear facilities across the United States is hazardous to the communities which host those facilities.

The settlement which became the Contract Amendment specifically injures the Plaintiff in ways delineated in his Affidavit. Events occurring post-September 11th and having a direct impact on operations at Peach Bottom increase the potential for exposure to the Plaintiff from radiation releases. The Contract Amendment enables Exelon Corporation to store additional waste on-site, thus increasing the potential for exposure of the Plaintiff. In addition, Peach Bottom remains the only nuclear plant in the nation to be shutdown by the Nuclear Regulatory Commission due to operator malfeasance. As late as August of 2001, the NRC had documented criminal behavior at the facility. *See Epstein Affidavit*, Attachment "A". If federal environmental law had been followed, these risks would have been identified, disclosed, discussed, and made available to the Plaintiff. Such is the purpose of the National Environmental Policy Act - to identify, disclose, and discuss risks; and to identify alternatives to the proposed action. *See* 40 CFR §1500.1, 1500.2, 1501.2, 1502.14 (analysis of alternatives to the proposed action is the "heart of any environmental impact statement.").

In addition to the increased physical risk imposed by the changes embodied in the Amendment to the Contract, the Plaintiff has also asserted procedural injuries - stemming from his inability to participate in commenting upon the actions of the DOE. The Plaintiff has also alleged that his participation in the environmental review process was circumvented due to DOE's refusal to prepare an Environmental Impact Statement, which provides for public commenting and participation. *See Plaintiff's Complaint* at paras. 42, 49, 54, and 55; *Plaintiff's Declaration* at Exhibit "A".

Under the National Environmental Policy Act, the Plaintiff has been accorded a procedural right - of participating in the development of an Environmental Impact

-9-

Statement - and of being notified of the adverse environmental impacts of the proposed action. In addition, NEPA is intended to assist agency decisionmakers with making the best decisions which create a "healthful environment" and which explore alternatives to the proposed action. 42 U.S.C. §4331(c). If the agency had proceeded to prepare an Environmental Impact Statement and evaluated alternatives to the proposed action, the agency may have decided to minimize the risks inherent in the Amendment to the Contract and handled the settlement in a different manner.

Finally, the Plaintiff has alleged that - as a PECO Energy Company shareholder - the Contract Amendment may adversely impact the Plaintiff's financial interests. *See Plaintiff's Complaint* at para. 4(b); *Plaintiff's Declaration* at Exhibit "A". In addition, as a party to a Settlement negotiated between PECO Energy and the Plaintiff, the Plaintiff holds certain contractual rights against PECO Energy, and the settlement between DOE and Exelon adversely impacts those rights, thus abrogating the agreement between the Plaintiff and the corporation.

Under that agreement, the corporation is contractually obligated to abide by provisions governing the decommissioning of Peach Bottom, the planned operating life of Peach Bottom, spent fuel isolation, and community investment in the Peach Bottom area. Almost all of these contractual obligations are circumvented - and trumped, in some instances - by the settlement which was codified into the Contract Amendment between DOE and Exelon. The Plaintiff has explained these abrogations specifically within his Affidavit which was prepared in support of this Brief. *See Epstein Affidavit* at Attachment "A".

Thus, the Plaintiff has satisfied all standing requirements for bringing a challenge to the agency's failure to prepare an Environmental Impact Statement for the Amendment to the Contract with the nuclear utility; and for challenging the refusal of the agency to publish notice of the Amendment in the Federal Register.

## IV. Conclusion

Therefore, the Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss this action.

Respectfully Submitted this 21 Day of May, 2002.

_____
Eric Joseph Epstein, *pro se*
4100 Hillsdale Road
Harrisburg, Pennsylvania 17112

# Certificate of Service of Process

I, Eric J. Epstein, hereby swear and affirm that I have served the accompanying SUPPLEMENTAL ANSWER on the parties below by the following method

FIRST CLASS U.S MAIL PREPAID

I swear and affirm that I have served the ANSWER on the following parties:

John P. Almeida (*Counsel for Defendants*)
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044

Brad Fagg (*Counsel for Intervenor*)
Morgan, Lewis & Bockius
1800 M Street, NW
Washington, D.C. 20036

The SUPPLEMENTAL ANSWER was served on the above parties on this 21 Day of May, 2002.

Eric Joseph Epstein
4100 Hillsdale Road
Harrisburg, Pennsylvania 17112