FILED
HARRISBURG, PA

MAY 21 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# In the United States District Court for the Middle District of Pennsylvania

ERIC JOSEPH EPSTEIN,
    Plaintiff

v.

SPENCER ABRAHAM, Secretary, U.S. Department of Energy; HERBERT D. WATKINS, Contracting Officer, United States Department of Energy

    Defendant

and

EXELON GENERATION COMPANY, LLC

    Intervenor

Civ. No. 01-0682
Judge Kane

## DECLARATION OF ERIC JOSEPH EPSTEIN

Eric Joseph Epstein, declares and says:

1. I am the Plaintiff in the case of *Epstein v. Abraham*, Civ. No. 01-0682 in the United States District Court for the Middle District of Pennsylvania.

2. I live, work, and raise my child in south-central Pennsylvania.

-1-

3. I actively participated in Settlement Negotiations - and successfully advocated for resolution of the following issues at the Peach Bottom Atomic Power Station (PBAPS): nuclear decommissioning; spent fuel isolation; radiation monitoring; and community investment in south-central Pennsylvania.

4. I am a PECO Energy Company - now Exelon Generating Company - shareholder.

5. I serve as the coordinator of a radiation monitoring group at Peach Bottom and Three Mile Island Atomic Power Stations. As part of that work, I monitor radiation releases from those two power stations and coordinate other individuals and groups that monitor radiation releases from the stations.

6. I serve as Chairman of Three Mile Island Alert, Inc., which monitors TMI-1 and TMI-2, and which has served as the principal community watchdog over the activities of the Three Mile Island Atomic Power Station and the Peach Bottom Atomic Power Station. TMIA's efforts on behalf of south-central Pennsylvania have been recognized by the Governor of Pennsylvania (Mark Schweiker); the Pennsylvania Senate (a resolution sponsored by Senator Jeffrey Piccola, Dauphin County); and the Pennsylvania House of Representatives (a resolution sponsored by Representative Bruce Smith, York County).

7. I am a signatory to the Joint Petition for Full Settlement of Application of PECO Energy Company which enabled the creation of Exelon Generating Company; and I negotiated Appendix B which allowed for the deployment of low-volume air sampling at Peach Bottom; dispersal of thirty radiation monitoring devices in the Peach Bottom area; increased community investment; and the expansion of remote robotics research activities to include Peach Bottom units 2 and 3.

8. As part of the Negotiated Settlement, I raised the following issues, which were settled by PECO Energy [now "Exelon Generation Company"] with the following contractual obligations:

   a. Nuclear Decommissioning:

   Any "upward adjustment", up to $50 million, for nuclear decommissioning at Peach Bottom Units 2 & 3, above the 1995-1996 cost projections filed with the Pennsylvania Public Utilities Commission, must be paid by PECO Energy shareholders.

   PECO Energy established a nuclear decommissioning cost sharing formula between rate payers (95%) and shareholders (5%).

   PECO Energy committed $500,000, for a period of five years, to conduct dedicated research relating to nuclear decommissioning, i.e. remote robotics.

   A substantial part of those monies were given to the EFMR Monitoring Group, with my oversight and supervision, and were spent at Peach Bottom Units 2 & 3 in fiscal year 2002 on the purchase of a shield robot, remote welding 3R14 on reactor water coolant cleanup valves 15 & 18, and the purchase of a Remote Geris machine for work in the drywell. These projects and others currently save Peach Bottom workers a considerable amount of avoidance to radiation through the deployment of remote robotics and equipment.

   The DOE Contract Amendment challenged in this action failed to afford me with the opportunity to discuss how these decommissioning projects at Peach Bottom would be adversely affected by the acceptance of additional high level radioactive waste, and how PECO Energy would comply with the terms of the Negotiated Settlement.

### b. Planned Operating Life of Peach Bottom:

In the Negotiated Settlement, PECO Energy agreed to fund the activities of the EFMR Monitoring Group to include the Peach Bottom nuclear generating station. I have spent a considerable amount of time training area residents to maintain and operate radiation monitors in close proximity to the Peach Bottom Atomic Power Station.

At and around the newly constructed High Level Radioactive Waste storage site, i.e. the Dry Cask Storage Area, testing monitors are deployed by the corporation which yield monthly dose rates rather than real time feedback. The Dry Cask Storage Area would be the area used to store additional high level radioactive waste as a result of the DOE Settlement with Exelon. Peach Bottom's spent fuel pools are currently filled to capacity.

In November of 2000, my organization, EFMR, deployed a low-volume air sampling station at Peach Bottom to monitor for gamma radiation releases. I monitor these stations, which provide a real-time, daily redundancy monitoring system.

The DOE Settlement with Exelon at issue in this case precluded me and EFMR from providing impact and feedback concerning radiation monitoring and "masking" of radiation levels due to the elongation of storage time for high level radioactive waste on-site.

### c. Spent Fuel Isolation:

Under the Negotiated Settlement, PECO Energy agreed to not import any Low Level Radioactive Waste (LLRW) or High Level Radioactive Waste into Peach Bottom.

Under the Negotiated Settlement, PECO Energy agreed not to utilize Mixed Uranium Oxide at Peach Bottom.

The DOE Settlement with Exelon adversely impacts direct, legally binding restrictions that I obtained on the storage, transport, and content of radioactive waste stored at the Peach Bottom Atomic Power Station.

### d. Community Investment in the Peach Bottom Area:

Under the Negotiated Settlement, PECO Energy agreed to increase community investment levels by 5% per year over a 60 month period.

The DOE Settlement impacts the quality of life for all area residents, including myself, as a resident of the area.

The DOE Settlement, failing to comply with federal disclosure and impact laws, eliminated any venues for me to discuss adverse impacts as a result of the changed physical condition of the Peach Bottom Atomic Power Station.

9. The failure of the DOE to prepare an Environmental Impact Statement for the Amendment to the Contract between DOE and Exelon Generating Company has, or may, injure me in the additional following ways:

(a) I was prevented from learning the full extent of the adverse impacts which are caused by the granting of additional rights to PECO Energy Company to store additional amounts of high level radioactive waste, and by the trading of the company's removal allocation credits with other utilities.

(b) I was prevented from participating in the process whereby an Environmental Impact Statement is created, from suggesting alternatives to the proposed Amendment which would reduce environmental and community harms, from providing my expertise to the agency to ensure that a complete impact statement was prepared.

(c) I was deprived of the ability of legally challenging the sufficiency of the environmental impact statement prepared by the agency, of exercising my rights to participate in public hearings, and of securing expert testimony on the impact of the Contract Amendment.

(d) Peach Bottom remains the only nuclear power plant shutdown by the Nuclear Regulatory Commission due to operator malfeasance. As such, the DOE Settlement which grants additional rights to the corporation - given the past operating record of the utility - substantially increases the likelihood of exposure to radiation from stored high level radioactive waste.

(e) On January 26, 1996, I was given a tour of the nuclear fuel storage pools at the Peach Bottom Atomic Power Station by senior staff. At that time, the spent fuel pools were close to full, were not secured, and plans were not being made by the corporation to secure the high level waste in spent fuel pools. It is my belief that this situation has been aggravated by the addition of approximately 150 metric tons of spent nuclear fuel between 1996 and 2001. The increase authorized by the DOE Settlement substantially increases the likelihood of exposure to radiation from stored high level radioactive waste.

(f) According to the National Council on Radiation Protection Measurements, a breach of dry casks, similar to the ones used at Peach Bottom, could provide a lethal radiation does in an area of 2,700 square miles. I live within that area.

(g) On August 15, 2001, the NRC's Office of Investigation documented criminal behavior by two of Exelon's Emergency Preparedness personnel. The NRS found that the "technicians fabricated siren testing maintenance records, performed deficient siren tests on the off-site EP response sirens and intentionally installed jumper wires in the siren boxes disabling important system functions." The DOE Settlement would give the corporation the ability to store greater amounts of high level radioactive waste under the same management system, and thus increase my exposure to a radiation leak.

(h) On October 6, 2001, the NRC issued a "Security Advisory" and requested 13 prompt actions to be taken at nuclear plants. The increased risk of terrorist activity at nuclear plants; coupled with the DOE Settlement agreement's authorization of increased storage of waste at Peach Bottom, places me at an increased risk of a radiation leak.

(i) On October 17, 2001, due to a "credible threat" against Three Mile Island, the Harrisburg and Lancaster airports were closed for four hours, and air travel was restricted in a twenty-mile radius.

(j) On November 7, 2001, Governor Mark Schweiker ordered the National Guard to Pennsylvania's nuclear power plants, including Peach Bottom.

(k) On March 28, 2002, NRC Chairman Richard A. Meserve admitted that Peach Bottom and the 102 nuclear power plants could not withstand an impact of an airplane the size of those that crashed into the Pentagon and World Trade Center on September 11, 2001.

(l) On April 13, 2002, Peach Bottom's corporate owner requested an extension to meet federally mandated security upgrades required as a result of the attacks on September 11th.

Due to those developments, any settlement agreement which increases the amount of radioactive waste stored in dry casks at Peach Bottom increases my potential for exposure to radiation. The preparation of an Environmental Impact Statement would have revealed, disclosed, and discussed all of these risks, and enabled me to participate in that process.

10. The failure of the DOE to advertise the preparation of the Contract Amendment in the Federal Register has injured me in additional following ways:

(a) I was prevented from filing comments on the proposed Amendment with the agency.

(b) I was prevented from exercising my legal right to challenge the Amendment as being arbitrary and capricious and in violation of the law.

(c) I was prevented from exercising my First Amendment right to speak in opposition to the finalization of the Amendment.

11. The provisions of the Amendment to the Contract, which grant additional rights to Exelon Generating Company, will injure me in the following ways:

(a) The Contract Amendment, through its granting of additional rights to Exelon Generating Company, places me in increased physical danger from the transfer of additional amounts of high level radioactive waste to the Peach Bottom and TMI Atomic Power Stations.

(b) The Contract Amendment enables the Company to "trade" disposal rights for economic gain and enables the Company to ship high level radioactive waste off-site.

(c) The Contract Amendment enables the Company to maintain and increase the storage of high level radioactive waste at Peach Bottom 2 and 3 for an indefinite period of time through the use of an untested, commercial dry cask technology, i.e. Trans-Nuclear TN-68 (Raytheon).

(d) The Contract Amendment settles all legal claims by the utility against the DOE. As a shareholder of the utility, the ability to recover damages from the DOE has now been barred.

I declare under penalty of perjury and pursuant to 28 U.S.C. §1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 21 Day of May, 2002

_____
Eric Joseph Epstein