ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC JOSEPH EPSTEIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 01-0682 |
| | ) | Judge Kane |
| | ) | |
| SPENCER ABRAHAM, Secretary of the | ) | |
| U.S. Department of Energy; HERBERT | ) | |
| WATKINS, Contracting Officer, U.S. | ) | |
| Department of Energy | ) | |
| Defendants. | ) | |
| | ) | |

FILED
HARRISBURG, PA

MAY 3 1 2002

MARY E. D'ANDREA, CLE
Per

**SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF
FEDERAL DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

In Plaintiff's opposition to Defendants' supplemental memorandum, Plaintiff argues that the contract amendment at issue here does not "arise under" the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, and that the jurisdictional provisions of the NWPA do not apply here. Plaintiff's argument bears no merit as the contract with PECO plainly implements a provision of the NWPA, and therefore review of amendments to the contract are subject to the jurisdictional provisions of the NWPA. Plaintiff also argues that he has satisfied the requirements for standing to pursue his NEPA claims, but Plaintiff has not established cognizable injury, and therefore has not established standing.

## ARGUMENT

## I.    The Jurisdictional Requirements Of The NWPA Apply Here.

In his Opposition, Plaintiff suggests that the contract amendment at issue here does not "arise under" the Nuclear Waste Policy Act ("NWPA"), and therefore, the provisions of the NWPA vesting original and exclusive jurisdiction in the U.S. Courts of Appeals are inapplicable. Plaintiff errs. Under established caselaw, the Department of Energy's obligations relating to contracts arising under the NWPA are subject to the jurisdictional provisions of the NWPA. Here, Plaintiff's claims would attempt to adjudicate the DOE's obligations under NEPA

1

and the APA regarding a contract implementing a provision of the NWPA, and

therefore, the jurisdictional provisions of the NWPA apply.

Plaintiff suggests that the Ninth Circuit's decision in Natural Resources

Defense Council ("NRDC") v. Abraham, 244 F.3d 742 (9th Cir. 2001), supports

Plaintiff's argument.  However, the facts of that case are readily distinguishable

from the facts here, and an examination of the NRDC case shows why the

jurisdictional provisions of the NWPA apply here.  In NRDC, the Ninth Circuit

held that the judicial review provisions of the NWPA did not apply to a suit

challenging the Department of Energy's Order 431.5 which provided "a process for

determining whether certain radioactive waste streams are `waste incidental to

reprocessing' that are not considered `high-level radioactive waste'" for waste

produced in federal nuclear facilities.  NRDC, 244 F.2d at 742.  The Ninth Circuit

recognized that the challenged Order addressed management of "radioactive waste

at federal defense facilities," not civilian nuclear power facilities, and therefore, the

Order "is not a decision `under' NWPA." Id. at 743.  The Ninth Circuit recognized

that the NWPA addressed the generation of waste at civilian facilities, while the

Atomic Energy Act, 42 U.S.C. § 2151 et seq., addressed waste generated from

government facilities.  Id. at 744-45.  Therefore, the court held, the jurisdictional

provisions of the NWPA were inapplicable to that case, and jurisdiction did not

2

belong in a U.S. Court of Appeals.

Unlike the DOE Order at issue in <u>NRDC</u>, here, the agency action being challenged is a contract implementing a provision of the NWPA regarding waste from civilian nuclear generators. The NWPA directed DOE to enter into contracts with civilian nuclear energy producers to "dispose of the high-level radioactive waste or spent nuclear fuel." 42 U.S.C. § 10222(a)(5)(B). It is the NWPA that gave the agency its authority to enter into contracts like the one at issue here, and an amendment to such a contract plainly "arises under" the NWPA. Therefore, judicial review of DOE's obligations relating to the contract are subject to the jurisdictional provisions of the NWPA, and any claims relating thereto should be brought in a U.S. Court of Appeals.

Plaintiff does not argue that NWPA contract issues are not subject to the jurisdictional provisions of the NWPA. Indeed, Plaintiff readily acknowledges that the original standard contract between DOE and Equilon "certainly arose `under' the NWPA." Pl. Supp. Br. at 5. Yet, Plaintiff somehow suggests that an amendment to this same contract does not "arise under" the NWPA. As discussed in Defendants' first supplemental brief, numerous suits regarding DOE's obligations relating to its NWPA contracts with civilian nuclear power producers have been litigated in the U.S. Courts of Appeals. <u>See</u> Def. Supp. Br. at 3; <u>see also</u>

3

Northern States Power Co. v. U.S. Dept. of Energy, 128 F.3d 754 (D.C. Cir. 1997);

Indiana Michigan Power Co. v. Dept. of Energy, 88 F.3d 1272 (D.C. Cir. 1996);

General Electric Uranium Management Corp. v. U.S. Dept. of Energy, 764 F.2d

896 (D.C. Cir. 1985) (holding that judicial review section of NWPA applies to

Subchapter III of Act where sections on waste disposal contracts are found).

Similarly, here, claims regarding the agency's amendment to the Equilon contract

should be brought in the U.S. Courts of Appeals.

## II.    Plaintiff Has Not Established Standing To Pursue His NEPA Claims.

Plaintiff's assertion of "injury" from the contract amendment at issue here

does not satisfy the requirements of standing.  As an initial matter, Plaintiff

suggests that his economic interest in the contract as a PECO shareholder provides

standing.  However, as discussed in Defendants' first supplemental brief, economic

injury does not fall within the zone of interest of NEPA, and therefore cannot

support a plaintiff's standing in a NEPA action.  See Def. Supp. Br. at 9.  As

recognized by the D.C. Circuit, while an asserted injury may satisfy the

constitutional standing requirement, "the injury that supplies constitutional standing

must be the same as the injury within the requisite `zone of interests' for purposes

of prudential standing."  Mountain States Legal Foundation v. Glickman, 92 F.3d

1228, 1232 (D.C. Cir. 1996).  Thus, while Plaintiff's asserted economic interest in

4

PECO may satisfy Article III's injury requirement, it does not fall within the zone

of interest of NEPA and therefore cannot satisfy the prudential requirements for

standing.

    For the first time in his supplemental memorandum, Plaintiff alleges

environmental injuries relating to the PECO contract, but an examination of

Plaintiff's assertions reveals both factual and legal inaccuracies.  As discussed in

Federal Defendants' reply in support of motion to dismiss, Plaintiff's assertions

that the contract amendment alters the environmental status quo regarding the

storage of waste from other facilities and the schedule for DOE taking possession

of waste from PECO are simply incorrect.[1]  Def. Reply Mot. to Dismiss at 3-5.

    With regard to the schedule for DOE taking possession of PECO waste, the

original contract allowed PECO to exchange delivery commitment schedules with

other facilities, and the contract amendment did not change this.  See Original

_____

[1] As stated by the Third Circuit, a court reviewing a motion to dismiss may
examine documents integral to or explicitly relied upon in a complaint without
converting the motion into a motion for summary judgment.  In re Burlington Coat
Factory Sec. Litig., 114 F.3d 1410, 1426 (3rd Cir. 1997).  Contrary to Plaintiff's
suggestion that the Court "must assume that all facts plead [sic] in the complaint
are true," Pl. Supp. Br. at 8, adjudication of a 12(b)(6) motion does not require the
Court to accept Plaintiff's characterization of the legal implications of the contract
amendment as true.  Nor must the Court simply accept Plaintiff's factual
characterization of the contract when the contract itself constitutes the best
evidence of its contents.

Contract Art. V(E) (Exhibit A to Brownstein Declaration, submitted with Defendants' Motion to Dismiss) ("Purchaser shall have the right to exchange approved delivery commitment schedules with parties to other contracts with DOE for disposal of SNF and/or HLW; provided, however, that DOE shall, in advance, have the right to approve or disapprove, in its sole discretion, any such exchanges.").  The contract amendment did not introduce this component to the contract as it had already existed in the original contract.

With regard to storage of waste from other facilities at PECO sites, decisions about the storage of waste at PECO facilities lie within the exclusive power of the Nuclear Regulatory Commission and are outside DOE's authority to approve or disapprove.  See Def. Reply Mot. to Dismiss at 4-5; Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 207 (1983).  Contrary to Plaintiff's assertion, the contract amendment does not–indeed, could not--change the statutorily-prescribed role of NRC in the operation of civilian nuclear power plants.

Notwithstanding the factual inaccuracies of Plaintiff's description of the effects of the contract amendment, Plaintiff fails to show that the contract amendment affects him in a concrete manner that distinguishes him from any other member of the public.  Indeed, Plaintiff's only assertion is that Plaintiff lives in

"close physical proximity to the Peach Bottom Atomic Power Station and Three Mile Island Nuclear Generating Facility." Pl. Supp. Br. at 8. However, Plaintiff does not explain exactly how close he lives to these facilities, or how his proximity to these facilities affects him any more than any of the other millions of citizens in the region. Plaintiff's assertions of "harm" do not distinguish him from any other member of the public living in the state of Pennsylvania, and therefore do not satisfy the required showing of injury.

Plaintiff makes numerous assertions regarding his work as a nuclear activist, but such allegations do not in and of themselves confer standing. Indeed, if this were all that was required for standing, Supreme Court precedent requiring that plaintiffs demonstrate actual injury-in-fact beyond merely theoretical interest in litigation would be meaningless. See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Plaintiff's work as a nuclear activist may be affected by the availability of NEPA procedures, but the Supreme Court has stated that while "procedural rights" may lower "the standards for redressability and immediacy," a putative plaintiff must still make a showing of concrete interest and injury for a finding of standing, and that a plaintiff "raising only a generally available grievance about government–claiming only harm to his and every citizen's interest in proper application of the Constitution and laws," does not have standing. Id. at 572 n.7,

7

573-74.

## CONCLUSION

The NWPA vests original and exclusive jurisdiction over Plaintiff's claims

to the U.S. Courts of Appeals.  Plaintiff has not established standing to pursue his

NEPA claim where Plaintiff has not established cognizable injury.

DATED this 30th day of May, 2002.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General

*John P. Almeida*

JOHN P. ALMEIDA
Massachusetts State Bar #643441
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044
(202)305-0245 (telephone)
(202)305-0506 (fax)

Attorney for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of May, 2002 a copy of the foregoing SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS has been served on Plaintiff and Intervenor Defendant by first class U.S. Mail at the following addresses:

Eric Joseph Epstein
4100 Hillsdale Road
Harrisburg, PA 17112

Brad Fagg
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue NW
Washington, D.C. 20004

*John P. Almeida*