ORIGINAL

FILED
HARRISBURG, PA
MAY 31 2002
MARY E. D'ANDREA, CLERK
Per _____
           Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC J. EPSTEIN | : | CIVIL ACTION NO. CV-010682 |
| Plaintiff, | : | |
| v. | : | (JUDGE YVETTE KANE) |
| SPENCER ABRAHAM, et al. | : | |
| Defendants. | : | |

**INTERVENOR EXELON'S REPLY BRIEF IN RESPONSE
TO ORDER REGARDING ADDITIONAL BRIEFING**

Intervenor Exelon Generation Company, LLC ("Exelon") respectfully submits this reply brief in accordance with the Court's order dated April 3, 2002.

1. <u>Jurisdiction</u>

In response to the Court's request for additional briefing on the issue of jurisdiction, Exelon explained that the United States Courts of Appeal have original and exclusive jurisdiction over this case under Section 119(a) of the

1-WA_1806117_3.DOC

Nuclear Waste Policy Act ("NWPA"), codified at 42 U.S.C. § 10139(a)(1). Mr. Epstein argues that the NWPA jurisdiction provision does not apply because the amendment at issue "was purely a result of the DOE's 'avoidable delays' in accepting PECO's high level waste," and thus "did not arise 'under' the Act." Plaintiff's Supplemental Answer in Opposition to Defendants' and Intervenor's Motion to Dismiss ("Supplemental Answer") at 5. In support of this argument, Mr. Epstein cites to *Natural Resources Defense Council, Inc. v. Abraham*, 244 F.3d 742 (9th Cir. 2001), which was a case involving a challenge to a DOE decision regarding management of nuclear waste at DOE facilities. In holding that it did not have jurisdiction, the Ninth Circuit explained that DOE's authority to manage wastes at its own facilities does not derive from the NWPA, but rather from the Atomic Energy Act, 42 U.S.C. § 2151 *et seq.*, the Energy Reorganization Act, 42 U.S.C. § 5801 *et seq.*, and the Department of Energy Organization Act, 42 U.S.C. § 7101 *et seq.* Thus the challenged decision was not a DOE action "under" the NWPA.

Here, by contrast, DOE's authority to contract with commercial generators for the disposal of spent nuclear fuel is derived solely and exclusively from the NWPA. Thus, DOE's decision to alter the provisions regarding financial responsibility for such disposal under the contract could only have been "under"

2

the Act. Any challenge to that decision must therefore be brought in the court of appeals.

This self-apparent conclusion is not altered by Mr. Epstein's suggestion that "the settlement could have taken the form of a separately enforceable discharge of claims" rather than an amendment to the original contract for the disposal of spent fuel generated at Peach Bottom. Supplemental Answer at 3. The substantive terms of the settlement clearly are related to the terms of the original contract—the settlement implements changes to the DOE's and Exelon's financial responsibilities with respect to the ongoing contractual relationship for the disposal of spent fuel. This would be true whether the settlement was reflected in a separate discharge as suggested by Mr. Epstein, in the contract amendment form actually used, or in some other instrument. No matter what form the settlement took, it would (assuming the substance were the same) still be an action arising under the NWPA, and still be an action by DOE derived from the ultimate authority of the NWPA. The law is clear that such challenges must be brought in the courts of appeal. *See* Intervenor Exelon's Response to Order Regarding Additional Briefing ("5/03/02 Exelon Mem.") at 3-7.

2. <u>Standing</u>

Mr. Epstein's supplemental memorandum confirms that his claim to standing hinges entirely on his assertion that the challenged Amendment authorizes

3

Case 1:01-cv-00682-YK  Document 30  Filed 05/31/2002  Page 4 of 8

Exelon to store additional waste at Peach Bottom, thus increasing the risk of physical harm to the plaintiff as a result of a potential release of radiation. *See, e.g.,* Supplemental Answer at 9; Declaration of Eric Joseph Epstein, dated May 12, 2002 at ¶¶ 9(a), (e), (f), (g), (h), 11(a), (b), (c). As Exelon has explained on several occasions, the terms of the Amendment itself establish that it will have no effect on whether or how much spent fuel may be stored at Peach Bottom, and the Amendment itself does not authorize Exelon to transfer waste to or from Peach Bottom or any other facility. *See, e.g.,* Proposed Intervenor's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, dated July 2, 2001 ("7/2/01 Exelon Br.") at 10-13; Exelon's Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated August 3, 2001 ("8/3/01 Exelon Br.") at 3 n.2.

Mr. Epstein's only response is to argue that Rule 12(b)(6) requires the Court to accept as true his demonstrably incorrect assertion that "[t]he Contract Amendment enables Exelon Corporation to store additional waste on-site." Supplemental Answer at 8, 9. On the contrary, the law is crystal clear that a court need not accept as true an allegation in a complaint that is contradicted by a document that is attached to, and thus considered a part of, the pleading itself—in this case, the Amendment. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994). Mr. Epstein may not maintain his action simply by asserting that the

4

Amendment will affect the storage of spent fuel at Peach Bottom, when that assertion is belied by his own complaint. *See also* 8/3/01 Exelon Br. at 3-4 and citations therein. The standards under Rule 12(b)(6) simply do not require the Court to accept a plaintiff's allegation that up is down, or black is white.

In short, although individuals who live close to nuclear plants may in some circumstances have standing to challenge an agency's failure to perform an appropriate environmental analysis before taking action concerning the storage of spent fuel at the plant, Mr. Epstein's complaint does not, and properly could not, raise such a claim here.[1] The government action about which Mr. Epstein complains is an agreement regarding financial responsibility for DOE's delay in performing its duties under the NWPA and its Standard Contract with Exelon under the NWPA. Because Mr. Epstein cannot point to any provision in the Amendment that authorizes Exelon to alter its actual interim storage practices in any way, he cannot demonstrate the requisite causal connection between the government action complained of — *i.e.*, the Amendment — and his alleged injury — *i.e.*, increased risk of radiation release. As a result, he has no standing to challenge the Amendment. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555,

---

[1] *See e.g., Kelley v. Selin*, 42 F.3d 1501, 1507-10 (6th Cir. 1995) (challenging the NRC's environmental review conducted prior to approval of storage cask design to be used at the Palisades nuclear plant). As Exelon has explained, the appropriate respondent in such a circumstance would, in any event, be the NRC, not DOE. *See* 7/2/01 Exelon Br. at 12.

560-61 (1992); *AT&T Communications of New Jersey, Inc. v. Verizon New Jersey, Inc.*, 270 F.3d 162, 170 (3d Cir. 2001).

As for Mr. Epstein's claim that the Amendment will affect his alleged procedural or contractual rights under the agreement referred to in paragraph 4(e) of the complaint, neither the Supplemental Answer nor the supporting affidavit explains how these alleged rights are even potentially affected by DOE's settlement with Exelon. Nor can Mr. Epstein's status as a "PECO Energy Company shareholder" support his standing to bring this NEPA claim. As explained in the supplemental briefs submitted by both Exelon and the federal defendants, Mr. Epstein's alleged economic interests do not fall within the zone of interests protected by NEPA. 5/03/02 Exelon Mem. at 10 n.4; Supplemental Memorandum in Support of Federal Defendants' Motion to Dismiss at 9. Mr. Epstein's Supplemental Answer does not cite any contrary authority, and does not establish otherwise. *See* Supplemental Answer at 10.

Finally, Mr. Epstein's allusions to the potential for terrorist attacks at nuclear facilities are simply irrelevant. Whatever the merits of the national policy (expressed in the NWPA itself) that high-level nuclear waste should be stored at the generating reactor site until a permanent repository is completed, *see Kelly*, 42 F.3d at 1504, citing 42 U.S.C. § 10151(a)(1), this lawsuit is not the proper vehicle, nor is this Court the proper forum, for addressing the wisdom of such policies. Mr.

Epstein's editorializing about national security does not save his complaint or suggest that this lawsuit should not be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those expressed in Exelon's prior submission, the jurisdictional and standing issues identified by the Court require dismissal of the complaint. In addition, the complaint should be dismissed for failure to state a claim because, as set forth in Exelon's prior briefs, (1) NEPA is inapplicable to the challenged settlement agreement because the agreement will not affect the environment in any way, and (2) the APA was not violated because public contracts such as the one at issue in this case are exempted from notice-and-comment procedures.

Respectfully submitted,

Of Counsel:
Edward J. Cullen, Jr.
Jeffrey J. Norton
Exelon Corporation
2301 Market Street
Philadelphia, PA 19103

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101
(717) 237-4014

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5191

May 31, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2002, I caused a copy of Intervenor Exelon's Reply Brief in Response to Order Regarding Additional Briefing to be served by first-class mail, postage pre-paid, on the following:

Eric J. Epstein
4100 Hillsdale Road
Harrisburg, PA 17112

John P. Almeida
U.S. Department of Justice
Environmental & Natural
Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044

_____
Vincent Candiello