IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC JOSEPH EPSTEIN,
    Plaintiff,

    v.

SPENCER ABRAHAM, et al,
    Defendants.

CIVIL ACTION NO. 01-0682

(Judge Kane)

FILED
HARRISBURG

SEP 3 0 2002

MARY E. D'ANDREA, CLERK
Per_____
    DEPUTY CLERK

## MEMORANDUM AND ORDER

Before the Court is the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties fully briefed the merits of the motion, but failed to address important issues of justiciability. This Court ordered supplemental briefs on the justiciability issues on April 3, 2002. For the reasons stated below the case will be dismissed.

### I. Background

The Nuclear Waste Policy Act ("NWPA") of 1982, 42 U.S.C. §§ 10101-10270, authorizes the Department of Energy ("DOE") to enter into contracts with utilities that generate or hold title to spent nuclear fuel ("SNF") and high level waste ("HLW"). In the Act, Congress required the contracts to provide that, "in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of high-level radioactive waste or spent nuclear fuel as provided in this subchapter." § 10222(a)(5)(B). Pursuant to the NWPA, the DOE entered into standardized contracts with a number of utilities, including Philadelphia Electric Company, the predecessor of PECO Energy Company, which is the predecessor in interests of Intervenor-Defendant Excelon Generation Company. The Standard Contract, on which the individual standardized contracts were based, was drafted in 1983 and subjected to notice and comment under the Administrative Procedure Act ("APA"), 5

U.S.C. § 553, prior to adoption. 48 Fed. Reg. 5458 (Feb. 4, 1983) (proposed Standard Contract); 48 Fed. Reg. 16,590 (Apr. 18, 1983) (adopting Standard Contract); see 10 C.F.R. § 961.11 for text of Standard Contract.

In the original contract between the DOE and Philadelphia Electric Company, U.S. Department of Energy Contract No. DE-CR01-83 NE44405 ("Contract"), the DOE agreed to begin accepting SNF from Philadelphia Electric Company by January 31, 1998 based on a set delivery schedule. Philadelphia Electric Company agreed to pay fees for the DOE's services at a rate established by the NWPA and the Contract. Contract Art. VIII. The Contract was based on the Standard Contract, but modified to the individual circumstances of the utility. The Contract was not subject to notice and comment under the APA.

Delays in procuring a repository for these materials, particularly the problems surrounding the Yucca Mountain site, resulted in the DOE's inability to being accepting the SNF/HLW for disposal by the 1998 deadline. Parties to the various standardized contracts filed suit against the DOE for breach of its contractual obligation to begin disposal of the SNF/HLW by the agreed upon date. The United States Court of Appeals for the Federal Circuit held that the NWPA imposed an unconditional obligation on the DOE to begin disposal of the SNF by January 31, 1998, and that if the DOE failed to satisfy this obligation, the utilities could pursue contractual remedies. Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000). Thereafter, the DOE and PECO entered into negotiations to resolve potential claims arising out of the DOE's inability to abide by the January 31, 1998 deadline. The resulting Amendments to the Contract ("Amendments"), which adjust charges and schedules to address issues arising from avoidable delays, are the basis of this dispute.

In his pro se complaint, Plaintiff states that he is a shareholder in PECO Energy Company, serves as Chairman of Three Mile Island Alert, Inc., is a founding board member of

2

the Sustainable Energy Fund of Eastern Central Pennsylvania, and is Coordinator of the "EFMR Monitoring Group" at Peach Bottom and Three Mile Island ("TMI"). In his capacity as Coordinator of the EFMR Monitoring Group at Peach Bottom and TMI, he is actively involved with radiation monitoring and nuclear decommissioning. Plaintiff physically resides and works in close proximity to TMI Nuclear Generating Facility. Plaintiff alleges that he is adversely impacted and injured by the failure of the DOE to publish notice of the Amendments in the Federal Register for public comment, and by its failure to prepare an Environmental Impact Statement ("EIS").

The named Defendants are the Secretary and the Contracting Officer for the United States Department of Energy. Exelon Generation Company, LLC, the successor in interest to PECO, was granted the right to intervene upon its unopposed motion under Federal Rule of Civil Procedure 24(b)(2) by order of this Court on July 13, 2001.

Plaintiff, who had a role in negotiating the Contract but did not have the opportunity to participate in negotiating the Amendments, alleges that the Amendments (1) create a system of exchangeable removal allocation credits, and (2) authorize the on-site, dry cask storage at PECO's facilities in Pennsylvania of SNF and HLW produced at other plants.[1] The Plaintiff challenges the Amendments because (1) DOE failed to make the Amendments the subject of an EIS under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4331-32 (1994) and its accompanying regulations promulgated by the Council on Environmental Quality ("CEQ")

---

[1] Plaintiff's contentions that NEPA is violated because the Amendment authorizes alternative dispute resolution and alters the financial arrangement between DOE and PECO are entirely without merit and irrelevant. In no way does the authorization of alternative dispute resolution or a change to the financial arrangements between the parties which was authorized by the Contract in Article IX. B have a significant effect on the environment which would require a new EIS. Therefore, the Court will not address the contentions in this decision.

3

("Count I"), and (2) they were not published in the Federal Register for public review and comment under the APA ("Count II").

## II. Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land, Co., 906 F.2d 100, 103 (3d Cir. 1990). A Court may only dismiss a Plaintiff's complaint if no set of facts can be proven which would entitle him to relief. Id. "The issue is not whether a plaintiff might prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997).

The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Although the Court construes the pro se complaint liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), "pro se plaintiffs are not automatically entitled to take every case to trial." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996).

A court may raise the issue of subject matter jurisdiction sua sponte. See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704 (1982); Shaffer v. GTE North, Inc., 284 F.3d 500, 502 (3d Cir. 2002).

## III. Discussion

For the reasons that follow, Plaintiff's NEPA claim (Count I) will be dismissed sua sponte for lack of subject matter jurisdiction in this Court. Defendants' motion to dismiss Plaintiff's APA claim (Count II) will be granted. Each count will be addressed in turn.

4

### A. Plaintiff's NEPA claim

Plaintiff claims that the Amendment is a major federal action significantly affecting the environment under 42 U.S.C. § 4321. If it is, the DOE was obligated to perform an EIS prior to making the Amendment. The Defendants characterize the Amendment as merely an equitable adjustment to the financial arrangements between PECO and DOE after DOE failed to meet its unconditional obligations to begin disposal of the SNF/HLW by the January 31, 1998 deadline. The Defendants claim that a mere equitable adjustment to the financial arrangements does not significantly affect the human environment as a matter of law. The Intervenor-Defendant, Excelon Generation Company, further argues that a DOE decision to allow continued and accumulating storage of SNF/HLW at a nuclear power site does not have a significant affect on the environment as a matter of law because it does not change the environmental status quo.[2]

For purposes of dismissal from this Court, it does not matter whether the facts in dispute are sufficient to allege a major federal action significantly affecting the environment. This action arises out of the DOE's contractual obligations to dispose of SNF/HLW under the NWPA. As discussed in Section I, it is the NWPA that authorizes the DOE to enter into these disposal contracts. The NWPA takes jurisdiction away from the district courts over specified claims, including NEPA claims, that arise under the NWPA. The NWPA vests original jurisdiction in the United States Courts of Appeal over "any civil action -- for review of any environmental

---

[2] The Court need not reach the merits of Intervenor's argument, however, it notes that there is no good faith basis for this argument, as it is unsupported by the cases cited and needless for the disposition of this motion. There is a significant difference between transferring federal land to private ownership where the use of the land for grazing purposes remains the same after transfer, National Wildlife Federation v. Espy, 45 F.3d 1137 (9th Cir. 1995), or the acceptance of a non-development easement along wetlands, Sabine River Authority v. U.S. Deptartment of Interior, 951 F.2d 669 (5th Cir. 1992), and the decision to allow continued and cumulative storage of SNF/HLW from PECO and other facilities at a shutdown generation site. The duration and amount of storage may be drastically altered by such a decision. Such a decision by the DOE cannot be fairly characterized as a decision to leave nature alone.

5

impact statement prepared pursuant to the [NEPA] with respect to any action under this subtitle . . . or alleging a failure to prepare such statement with respect to any such action." 42 U.S.C. § 10139(a)(1)(D). Plaintiff's challenge to the DOE's failure to perform an EIS in amending the rates and schedules of the Contract clearly falls within this jurisdictional provision of the NWPA. Therefore this Court lacks subject matter jurisdiction over Count I of Plaintiff's Complaint.

### B. Plaintiff's APA claim.

Although the Third Circuit has not directly addressed whether statutory vesting of original jurisdiction in the Court of Appeals for one claim divests the District Court of jurisdiction over related claims in a case originally filed in the District Court, decisions from other circuits suggest that coherence and economy are best served if all claims relating to the agency decision are heard in the same Court. City of Rochester v. Bond, 603 F.2d 927, 936 (D.C. Cir. 1979). "[E]ven where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute." Investment Co. Inst. v. Bd. of Governors of the Fed. Reserve Sys., 551 F.2d 1270, 1279-80 (D.C. Cir. 1977). "If a decision of an administrative agency is based, in substantial part, on a statutory provision providing for exclusive review by a court of appeals, then the entire proceeding must be reviewed by a court of appeals." Suburban O'Hare Comm. v. Dole, 787 F.2d 186, 192-93 (7th Cir.1986). "[W]here an agency order arising from a common factual background and addressing a common question of law relies on two statutory bases that give rise to separate paths for judicial review, the entire order should be reviewed in a comprehensive and coherent fashion, and that review should take place in the court of appeals." Shell Oil Co. v. F.E.R.C., 47 F.3d 1186, 1195 (D.C. Cir. 1995). This approach avoids duplicative cases moving forward in the District Court and the Court of Appeals. Bond, 603 F.2d at 936 ("The policy behind having a special review procedure in the

6

first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals."). This Court finds the reasoning of these courts persuasive and finds that the entire case is solely within the jurisdiction of the Court of Appeals. Therefore the APA claim will be dismissed for lack of jurisdiction.

### IV. Order

Accordingly, for the reasons stated in this memorandum, **IT IS ORDERED THAT**: 1) Count I is **DISMISSED** for lack of subject matter jurisdiction in the District Court, and 2) Defendants' Motion to Dismiss Count II is **GRANTED**. The Clerk of Court shall close the file.

Yvette Kane
United States District Judge

Date: September 30, 2002